399 A.2d 1110

COMMONWEÀLTH of Pennsylvania

v.

Robert Earl LOAR, Appellant.

No. 390 April Term, 1978.

Superior Court of Pennsylvania.

Submitted April 10, 1978.

Decided March 16, 1979.

400

D. Stephen Ferito, Pittsburgh, for appellant.

W. Bertram Waychoff, District Attorney, and with him, James A. Caldwell, Special Assistant District Attorney, Waynesburg, for Commonwealth, appellee.

Before JACOBS, President Judge, and HOFFMAN, CER-
CONE, PRICE, VAN der VOORT, SPAETH and HESTER,
JJ.

SPAETH, Judge:

This is an appeal from judgments of sentence on sixteen
counts of theft. The Crimes Code, Act of Dec. 6, 1972, P.L.
1482, No. 334, § 1, 18 Pa.C.S.A. § 3921(a).

1

Appellant first challenges the sufficiency of the evidence.
Testimony at trial was as follows. In the early morning of
November 9, 1976, state and local police pursued a black
truck, which had been reported stolen. There was one
person in it—not appellant but a Thomas Ostrander. The
police lost sight of the truck for a short time, but about 4:40
a. m. they found it again, near the house of Andrew Jackson
Loar, appellant's brother. The engine was still running.
Footprints in fresh snow (the snow had stopped falling about
12:30 or 1 a. m.) led from the driver's door of the truck to
the house. Parked in the driveway was an automobile
registered to appellant's brother. Its engine was warm.
There were footprints in the snow going from the automo-
bile to the house, and then back out to the automobile and in
again to the house at least once more. With the permission
of appellant's brother, the police searched the house. They
found numerous items that had been reported stolen, includ-
ing a good deal of automobile equipment. Appellant was in
an upstairs bedroom, in bed, wearing thermal underwear.
Ostrander was on the floor beside him, clothed. Appellant's
trousers were on the floor in a heap; they were wet at the
cuffs, as were Ostrander's. Appellant said he had been in
bed since 8 p. m. The police arrested Ostrander. Appellant
was arrested the next day.

In deciding the sufficiency of this evidence, we must
first accept as true all of the evidence upon which the jury
could properly have based its verdict, and then ask whether
that evidence, with all reasonable inferences from it, was

sufficient to prove appellant's guilt beyond a reasonable doubt. *Commonwealth v. Thomas*, 465 Pa. 442, 350 A.2d 847 (1976); *Commonwealth v. Fortune*, 456 Pa. 365, 367, 318 A.2d 327, 328 (1974); *Commonwealth v. Petrisko*, 442 Pa. 575, 579–89, 275 A.2d 46, 49 (1971). However, his guilt must be proved and not conjectured. *Commonwealth v. Wilson*, 225 Pa.Super. 513, 312 A.2d 430 (1973).

■ The Commonwealth's case was not overwhelming. The evidence was plainly sufficient for the jury to make these findings: that two persons had been involved in the theft of the truck—one being needed to drive an automobile to the scene of the theft, the other being needed to drive the truck; that the two persons had returned to the Loar house at approximately the same time, as the running, or warm, engines indicated; that the driver of the automobile, in making at least two trips to the house, had unloaded things. What is not so plain is whether the jury could find that appellant had been the driver of the automobile. We have concluded that it could. Appellant had himself ruled out the possibility that he had arrived at the house from some unrelated activity, by telling the police that he had been in bed since 8 p. m. Given the evidence that his trousers were wet at the cuffs, the jury could find that this statement was false, and reflected a desire to conceal what he had been doing, specifically, that he had very recently been walking in the snow. From this finding the jury could reasonably infer that the place appellant had been walking in the snow was in the driveway, going back and forth from the automobile to the house.

2

■ Appellant argues that his jury was impermissibly tainted because it included one juror who had sat on a jury that had acquitted appellant on unrelated theft charges fifteen days before. We find that appellant has not properly preserved this argument for appeal. While appellant identified four prospective jurors as jurors from his earlier trial (all of whom were excused for one reason or another),

he nowhere established for the record that any other juror had sat earlier. It is only in his appellate brief that he alleges that Juror # 11, Rebecca Owen, had sat at his prior trial. We cannot now recognize such an allegation. *Commonwealth v. Young*, 456 Pa. 102, 115, 317 A.2d 258, 264 (1974). Furthermore, it appears that appellant used only two of his eight peremptory challenges;[1] without having exhausted his allotted number, he cannot be said to have been prejudiced when the court refused to excuse more than three jurors for cause.

### 3

■ Appellant argues that he should get a new trial because the prosecutor made prejudicial closing remarks. Before examining the remarks, we first note that, contrary to the Commonwealth's suggestion, appellant did not waive his right to object to the remarks by waiting until immediately after the prosecutor had finished his closing to the jury. Where the content of the remarks was paraphrased, where the Commonwealth does not dispute the accuracy of the paraphrase, and where the trial judge treated the objection as timely, the objection will not be held to have been waived. *Commonwealth v. Hughes*, 477 Pa. 180, 383 A.2d 882 (1978); *Commonwealth v. Gilman*, 470 Pa. 179, 368 A.2d 253 (1977).

■ Appellant objected to the prosecutor noting that no defense was presented. Assuming that such a comment was impermissible,[2] its prejudicial effect was adequately cured by the court's instructions to the jury:

1. Appellant's trial was on June 8, 1977, his peremptory challenges were then set out in Pa.R.Crim.P. 1126, repealed effective July 1, 1977. Under that rule, the number of peremptory challenges was set by reference to the Act of March 6, 1901, P.L. 16, § 1, *as amended*, July 9, 1901, P.L. 629, § 1, 19 P.S. § 811, *repealed*, Act of October 7, 1976, P.L. 1089, No. 217, § 2, effective in 90 days.

2. In some circumstances a prosecutor has been permitted to note that the Commonwealth's case was uncontradicted or undisputed. *Commonwealth v. Camm*, 443 Pa. 253, 277 A.2d 325 (1971), *cert.*

This presumption of innocence is so commonly known in our law as a Constitutional guarantee that the defendant has no duty, absolutely no duty to present any witnesses in his own behalf or present any testimony in his defense, nor even to take the witness stand, and the fact that he does not do so as he did not do in this case, cannot raise any inference in your mind for that reason as to his guilt or innocence.

N.T. 90.

 Appellant also objected that the prosecutor should not have mentioned that the Commonwealth had no right of appeal from a jury verdict of not guilty, because such a statement could have had effect of evoking sympathy for the Commonwealth. Whether the statement would have this effect is perhaps "mere speculation," *Commonwealth v. Smith*, 477 Pa. 505, 509, 384 A.2d 1202, 1204 (1978) (slip opinion at 4), but in any event, again, any prejudice to appellant was adequately cured by the court's instructions:

It is of no consequence, members of the jury, whether the Commonwealth has the right of appeal of this case or does not have the right to an appeal of this case as to your verdict. In the correct trial posture of this or any other case, that is of absolutely no moment, for we here are dedicated to the task of trying this defendant based upon the evidence here presented . . . .

N.T. 96.

Appellant objected to the prosecutor's characterization of him as a "Fagin of all," (from Dickens' *Oliver Twist*; an apparent reference to the fact that appellant was 29 and Ostrander, 19; it was the Commonwealth's theory that appellant was the leader in the thefts).

The prosecutor has the right to argue that the evidence proves the defendant guilty as charged, but he may not stigmatize the defendant. *Commonwealth v. Lipscomb*, 455 Pa. 525, 317 A.2d 205 (1974). However,

denied, 405 U.S. 1046, 92 S.Ct. 1320, 31 L.Ed.2d 589 (1972); *Commonwealth v. Kloch*, 230 Pa.Super. 563, 327 A.2d 375 (1974).

[E]ven where the language of the district attorney is intemperate, uncalled for and improper, a new trial is not necessarily required. *Commonwealth v. Crittenton*, 326 Pa. 25, 31, 191 A. 358 (1937); *Commonwealth v. McHugh*, 187 Pa.Super. 568, 577, 145 A.2d 896 (1958). The language must be such that its "unavoidable effect would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict." *Commonwealth v. Simon*, 432 Pa. 386, 394, 248 A.2d 289, 292 (1968). *Commonwealth v. Stoltzfus*, 462 Pa. 43, 61, 337 A.2d 873, 882 (1975).

Here, we cannot say that the prosecutor's characterization of appellant—apparently with no further elaboration—must have had such an unavoidably prejudicial effect. *Compare, Commonwealth v. Joyner*, 469 Pa. 333, 365 A.2d 1233 (1976) (repeated references to defendant as "leader of this pack of murderers"; reversible; several other incidents of improper comment also occurred); *Commonwealth v. Lipscomb, supra* ("hoodlums"; "animals"; imaginary monologue by victim; reversible); *Commonwealth v. Capalla*, 322 Pa. 200, 185 A. 203 (1936) (prosecutor pointed to defendant and called him a "cold-blooded killer"; reversible).

### 4

Finally, appellant argues that the lower court erred in failing to grant his motion to quash the criminal complaints. The basis of the motion was that the complaints had been issued on evidence insufficient to make out a prima facie case.

The evidence at appellant's preliminary hearing was as follows. Evidence was presented proving Ostrander's involvement in the various thefts and the presence of stolen goods in the house. To link appellant with the crimes the Commonwealth called Ostrander, who had previously given a statement inculpating appellant. However, Ostrander proceeded to deny that appellant was involved. The Commonwealth then had Ostrander read aloud from his prior

statement. Appellant's counsel sought to limit the use of the statement to impeaching Ostrander, but the magistrate allowed the statement in as substantive evidence. N.T. preliminary hearing at 15.

The Commonwealth initially argues that this court may not consider appellant's argument because the intervening indictment and trial have cured any defect in the Commonwealth's case at the preliminary hearing.[3] We do not agree.

Where a defendant files a petition for writ of habeas corpus on the ground that the Commonwealth failed to make out a prima facie case at the preliminary hearing, the defendant may not appeal an order denying the petition, absent compelling reasons, statutory authorization, or an allegation of lack of jurisdiction. *Commonwealth ex rel. Austin v. Hendrick*, 440 Pa. 236, 269 A.2d 750 (1970); *Commonwealth ex rel. Boatwright v. Hendrick*, 436 Pa. 336, 260 A.2d 763 (1970); *Commonwealth v. Lindsley*, 241 Pa.Super. 522, 366 A.2d 310 (1976). Furthermore, once an indictment has been handed down, a defendant is precluded from arguing that a prima facie case was not established at the preliminary hearing. *Commonwealth v. Brennan*, 193 Pa. 567, 44 A. 498 (1899); *Commonwealth v. Gordon*, 254 Pa.Super. 267, 385 A.2d 1013 (1978); *Commonwealth v. Walker*, 243 Pa.Super. 388, 365 A.2d 1279 (1976); *Commonwealth v.*

**3.** The Commonwealth also argues that appellant has waived the issue because he failed to petition for a writ of habeas corpus. True, in *Commonwealth v. Hetherington*, 460 Pa. 17, 331 A.2d 205 (1975), the Supreme Court said that filing a motion to quash the transcript of the committing magistrate was procedurally incorrect:

The established and accepted method for testing a finding of a prima facie case pre-trial, within this jurisdiction, has been by a writ of habeas corpus.

*Id.*, 460 Pa. at 23, 331 A.2d at 209.

*Accord, Commonwealth v. Gordon*, 254 Pa.Super. 267, 385 A.2d 1013 (1978). However, motions to quash have been accepted in the past. *See, e. g., Commonwealth v. Peregoy*, 226 Pa.Super. 330, 313 A.2d 301 (1973). Moreover appellant's motion to quash adequately raised the same question—the existence of a prima facie case—and asked for the same remedy—dismissal—as a petition for a writ of habeas corpus would have. In these circumstances, to find waiver would be to deny appellant relief on the basis of a mere defect in labeling.

*Banks,* 203 Pa.Super. 198, 199 A.2d 473 (1964). As a conse-
quence, if a defendant held for trial on less than a prima
facie case is to have any appellate relief from an order
erroneously denying his petition for habeas corpus, it must
be under the circumstances at hand, *i. e.,* by preserving the
point in post-trial motions, and then arguing it on appeal.
Furthermore, in recent cases, this court has reviewed the
question of whether a prima facie case was made out,
without even considering its reviewability. *See Common-
wealth v. Rick,* 244 Pa.Super. 33, 366 A.2d 302 (1976);
*Commonwealth v. Banks,* 228 Pa.Super. 308, 323 A.2d 780
(1974).

 Appellant argues that the Commonwealth failed to
make out a prima facie case because the only evidence
linking appellant to the crimes was Ostrander's prior state-
ment. In appellant's view, this statement was admissible
only to impeach Ostrander; so far as proof of appellant's
guilt was concerned, it was inadmissible hearsay.[4]

At first glance, it would seem that appellant's argument is
meritless under *Commonwealth v. Rick, supra,* which held
that a prima facie case was made out where part of the
Commonwealth's proof at the preliminary hearing was a
hearsay report on blood alcohol content. However, the
majority opinion in *Rick*[5] included a footnote that is impor-
tant to the decision in this case.

If, at the preliminary hearing, it had been clearly estab-
lished that the Commonwealth would be able to produce
only hearsay evidence at trial, the result in this case might

4. The Commonwealth argues that this argument is waived because
the transcript of the preliminary hearing was not in the record sent
up on appeal; it was included instead in appellant's brief. The filing
of the transcript is a matter of record. Why the transcript was not
included in the record on appeal is unclear. It is true that appellant
should have petitioned this court for permission to supplement the
record. On the other hand, the Commonwealth never previously
moved to have us reject appellant's inclusion of the transcript in his
brief, as it might have. Also, the Commonwealth does not dispute
the accuracy or authenticity of the transcript. Under these circum-
stances, we shall consider appellant's argument.

5. The author of this opinion dissented in *Rick.*

be different. Under those circumstances a district justice could justifiably conclude that submitting the case to the grand jury would be a waste of time.

*Commonwealth v. Rick, supra,* 244 Pa.Super. at 37, n. 1, 366 A.2d at 304, n. 1.

The wisdom behind this statement is obvious: if it is clear that the Commonwealth will never be able to get admissible evidence against a defendant, so that acquittal is a foregone conclusion, it would be an injustice to permit the defendant to be held until trial nonetheless.

■ In *Rick* "there was nothing to indicate . . . that the Commonwealth would not be able to produce the chemist himself at trial." *Commonwealth v. Rick, supra,* 244 Pa.Super. at 37, n. 1, 366 A.2d at 304, n. 1. Thus, it had *not* "been clearly established that the Commonwealth would be able to produce only hearsay evidence at trial." The same cannot be said here. Under longstanding Pennsylvania law, a prior inconsistent statement may be used only to impeach the declarant, not as substantive evidence. *Commonwealth v. Gee,* 467 Pa. 123, 354 A.2d 875 (1976); *Commonwealth v. Tucker,* 452 Pa. 584, 307 A.2d 245 (1973). It would seem, therefore, that by the reasoning of the *Rick* footnote, the magistrate at the preliminary hearing should not have held appellant for trial. In *Rick* the magistrate could regard counsel's objection to the proffered hearsay as an objection that could readily be met at trial—by calling the chemist. In other words, the magistrate knew enough to justify the conclusion that at trial the Commonwealth would be able to offer sufficient admissible evidence to get its case to the jury. Here that was not so. All the magistrate had was Ostrander's prior inconsistent statement; the Commonwealth neither offered nor suggested the existence of any evidence that would justify the magistrate in concluding that at trial it would be able to get to the jury.[6]

---

**6.** To be sure, at trial it developed that in fact there was such other evidence—which has been discussed *supra.* That this was so, however, does not go to the point of the *Rick* footnote, which is directed to how the case looked at the conclusion of the preliminary hearing.

Having said this much, however, we cannot ignore the fact that the rule barring the use of a prior inconsistent statement as substantive evidence was seriously questioned by four justices of our Supreme Court in *Commonwealth v. Gee, supra,* and that in that case, Federal Rule of Evidence 801(d)(1), which, with certain qualifications, allows such statements as substantive evidence, was cited with approval.[7] *Gee* involved the propriety of the lower court's refusal to allow defense counsel to cross-examine his own witnesses, who had testified unfavorably to the defendant. Mr. Justice EAGEN (joined by Mr. Justice O'BRIEN, with Justices POMEROY and NIX concurring in the result) held that the refusal was proper. However, as to the question not reached—the use to be made of the witnesses' prior inconsistent statements—the plurality said:

> This distinction [use of a statement to impeach but not as substantive evidence] has been firmly adhered to in Pennsylvania. . . . We note, however, that it has been strongly criticized as both unrealistic and an inappropriate application of the hearsay rule, since the person who made the statement is available for cross-examination about its truth or falsity.

*Commonwealth v. Gee, supra,* 467 Pa. at 136, n. 5, 354 A.2d at 880, n. 5.

Mr. Justice ROBERTS, joined by Mr. Justice MANDERINO (Mr. Chief Justice JONES did not participate) dissented, arguing first, that cross-examination should have been permitted, and then coming out strongly in favor of allowing prior inconsistent statements to be introduced as substantive evidence. *Id.,* 467 Pa. at 143, 354 A.2d at 884. Given these

---

**7.** Elsewhere in *Gee,* the plurality indicated it would view the federal rules with considerable deference:

> While this new rule [not the one in question in the present case] and its rationale are not binding upon us, they are highly persuasive indications of the prevalent trend toward liberalization in this area.

*Commonwealth v. Gee, supra,* 467 Pa. at 135, n. 4, 354 A.2d at 880, n. 4.

statements, we believe we should reexamine, and discard, the existing Pennsylvania rule in favor of a more liberal one.

The practice of admitting a witness's prior inconsistent statement as substantive evidence has been accepted in many jurisdictions. *Commonwealth v. Gee, supra*, 476 Pa. at 145, 354 A.2d at 885 (Mr. Justice ROBERTS, dissenting, citing cases and statutes). *Contra, State v. Saporen*, 205 Minn. 358, 285 N.W. 898 (1939); *Ruhala v. Roby*, 379 Mich. 102, 150 N.W.2d 146 (1967). The reasons for this have been well stated in comment to the California statute, as follows:

Section 1235 admits inconsistent statements of witnesses because the dangers against which the hearsay rule is designed to protect are largely nonexistent. The declarant is in court and may be examined and cross-examined in regard to his statements and their subject matter. In many cases, the inconsistent statement is more likely to be true than the testimony of the witness at the trial because it was made nearer in time to the matter to which it relates and is less likely to be influenced by the controversy that gave rise to the litigation. The trier of fact has the declarant before it and can observe his demeanor and the nature of his testimony as he denies or tries to explain away the inconsistency. Hence, it is in as good a position to determine the truth or falsity of the prior statement as it is to determine the truth or falsity of the inconsistent testimony given in court. Moreover, Section 1235 will provide a party with desirable protection against the 'turncoat' witness who changes his story on the stand and deprives the party calling him of evidence essential to his case.

*Comment,* California Evidence Code § 1235.

The Advisory Committee of the Federal Rules has in addition stated:

Nor is it satisfactorily explained why cross-examination cannot be conducted subsequently with success. The decisions contending most vigorously for its inadequacy in fact

demonstrate quite thorough exploration of the weaknesses and doubts attending the earlier statement. *State v. Saporen*, 205 Minn. 358, 285 N.W. 898 (1939); *Ruhala v. Roby*, 379 Mich. 102, 150 N.W.2d 146 (1967); *People v. Johnson*, 68 Cal.2d 646, 68 Cal.Rptr. 599, 441 P.2d 111 (1968). In respect to demeanor, as Judge Learned Hand observed in *Di Carlo v. United States*, 6 F.2d 364 (2d Cir. 1925), when the jury decides that the truth is not what the witness says now, but what he said before, they are still deciding from what they see and hear in court.

Advisory Committee's Note, Federal Rules of Evidence, Rule 801(d).

The Federal rule provides that the prior statement is admissible as substantive evidence if:

The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with his testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition . . . .

F.R.Evid. 801(d)(1).

This rule represents a compromise: as proposed, there was no requirement that the prior statement must have been made under oath and at a proceeding such as a trial; this requirement was added by the Congress. We are persuaded by the Advisory Committee's opinion that the requirement is unnecessary, and that the better view is that where the witness is in court and subject to cross-examination, the witness's prior inconsistent statement, sworn or unsworn, should be admissible not only to impeach the witness but for the truth. As the advisory committee says:

So far as concerns the oath, its mere presence has never been regarded as sufficient to remove a statement from the hearsay category, and it receives much less emphasis than cross-examination as a truth-compelling device. While strong expressions are found to the effect that no

conviction can be had or important right taken away on the basis of statements not made under fear of prosecution for perjury, *Bridges v. Wixon*, 326 U.S. 135, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945), the fact is that, of the many common law exceptions to the hearsay rule, only that for reported testimony has required the statement to have been made under oath.

Advisory Committee's Note, Federal Rules of Evidence, Rule 801(d).

This is also the opinion of one of the most thoughtful scholars. *See* McCormick, *Evidence*, § 251 (Cleary Edition 1972). As Mr. Justice ROBERTS said in his dissent in *Gee* :

I believe that a trial is, fundamentally, a search for an objective account of the events upon which the criminal charges are based. An evidentiary rule which forces the searcher to ignore relevant clues whose reliability can be tested by cross-examination serves no purpose.

467 Pa. 146, 354 A.2d at 886.

Under the rule we now adopt the magistrate's decision to admit Ostrander's prior inconsistent statement into evidence at the preliminary hearing was justified, for at appellant's trial the statement would have been admissible, for the truth, if the Commonwealth had called Ostrander to the witness stand. Thus, the prima facie case made out by the Commonwealth at the preliminary hearing was *not* based only on hearsay; and the Commonwealth did not ask that appellant be held for trial without the prospect of admissible evidence to use against him at that trial—which was the concern expressed in footnote 1 in *Commonwealth v. Rick, supra*.

Affirmed.

CERCONE, P. J., and PRICE, J., concur in the result.

JACOBS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision in this case.