444 A.2d 653

**COMMONWEALTH of Pennsylvania,**

v.

**A. C. WALLER, Appellant.**

Supreme Court of Pennsylvania.

Submitted March 4, 1982.

Decided April 30, 1982.

34

John H. Corbett, Jr., Chief, Appellate Division, Asst. Public Defender, Pittsburgh, for appellant.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Deputy Dist. Atty., Kathryn L. Simpson, Asst. Dist. Atty., for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

## OPINION

NIX, Justice.

This is a direct appeal from the judgment of sentence imposed upon appellant, A. C. Waller, following conviction by the court sitting as the trier of fact, for murder of the third degree.[1]

Appellant raises two issues in the instant appeal: 1) whether the trial court erred in permitting the Commonwealth to plead surprise and cross-examine its own witness; and 2) whether the evidence was sufficient to sustain appel-

1. 18 Pa.C.S.A. § 2502(c) (Supp. 1981–1982).

lant's conviction for murder of the third degree. For the reasons that follow, we affirm.

The pertinent facts surrounding the incident were as follows. During the late afternoon of May 21, 1978, appellant and one Douglas Yancey were sitting in the front seat of Yancey's car. Suddenly, someone stuck a gun in the window on the passenger's side and shot appellant several times in the leg. This shooting occurred near the Hilltop Bar, located on Centre Avenue in the city of Pittsburgh.

The driver, Douglas Yancey, started the car and proceeded to take appellant to Central Medical Pavilion, a hospital located in downtown Pittsburgh. However, appellant told Yancey that he preferred to go to a different hospital located in the Oakland section of the city.

Yancey initially agreed and began driving in the direction of the second hospital. Upon reflection, Yancey decided to go to Central Medical because, according to him, it was closer. Yancey again changed directions and enroute back towards Central Medical passed the Hilltop Bar. Upon passing this location, Yancey testified that he saw a man in a white coat lying on the sidewalk near the Hilltop Bar. When appellant and Yancey arrived at Central Medical, appellant handed him a gun with the instruction that the weapon was to be given to appellant's brother.

The Commonwealth's theory at trial was that appellant, after turning back in the direction of Central Medical, passed the Hilltop Bar, observed the deceased and shot him. When the police arrived at the scene of the killing, Officer Bernard Hughes found a spent bullet casing, later determined to have been fired from a .25 caliber automatic pistol.

Earlier that same day, appellant was involved in an incident in which he accidentally shot a friend, one James Montgomery, in the leg. Montgomery testified at trial that the gun with which appellant had shot him was a .25 caliber automatic. The bullet which struck Montgomery was retrieved and after examination, it was determined to have been shot from a .25 automatic pistol.

The Commonwealth presented a ballistics expert with the Allegheny Crime Laboratory who testified that the bullets removed from both Montgomery and the deceased were fired from the same .25 caliber automatic pistol. This expert also testified that the spent shell casing found at the scene of the crime was of a type used with a .25 caliber pistol.

Appellant's first assignment of error is whether the trial court committed reversible error with reference to its rulings relating to the testimony of the Commonwealth witness, Douglas Yancey. Appellant contends the court erred when the prosecution pled surprise and was allowed to impeach Mr. Yancey.

In *Commonwealth v. Thomas*, 459 Pa. 371, 379–380, 329 A.2d 277, 280 (1974) this Court set forth the requirements as to when counsel may be granted the right to cross-examine his or her own witness:

> The fundamental rule in this jurisdiction is that it is within the sound discretion of the trial court to decide whether counsel may exercise the right of cross-examination of his own witness. *Commonwealth v. Dancer*, 452 Pa. 221, 305 A.2d 364 (1973). In recent years this Court has announced several principles for the trial courts to follow in the exercise of this discretion. First, before counsel may cross-examine his own witness on a plea of surprise the testimony given by the witness must be unexpected. *Commonwealth v. Turner*, 389 Pa. 239, 133 A.2d 187 (1957):

>> 'Generally, to entitle the party calling the witness to relief from the situation caused by the witness's adverse testimony, it is essential that such party be really surprised by such testimony.' . . . Surprise, in its legal connotation, does not embrace disappointment or a feeling of frustration on the part of the one seeking to have a witness testify otherwise than he has indicated he will do.' Id., 389 Pa. at 253–254, 133 A.2d at 193.

> Secondly, the testimony of the witness must be contradictory to statements the witness had made earlier. *Com-*

38

*monwealth v. Bynum,* 454 Pa. 9, 309 A.2d 545 (1973); *Commonwealth v. Tucker,* 452 Pa. 584, 307 A.2d 245 (1973); *Commonwealth v. Dancer,* 452 Pa. 221, 305 A.2d 364 (1973); *Commonwealth v. Stafford,* 450 Pa. 252, 299 A.2d 590 (1973); *Commonwealth v. Knudsen,* 443 Pa. 412, 278 A.2d 881 (1971). Thirdly, the testimony must be hurtful or injurious to the party calling the witness and beneficial to the opposing side. *Commonwealth v. Bynum, supra; Commonwealth v. Tucker, supra.*

'Since the purpose of the cross-examination and impeachment is then, to induce the jury to *disbelieve* the testimony of the witness—there must be something in the witness' testimony, which if not disbelieved by the jury will be hurtful or injurious to the party calling him. Were it otherwise there could be no occasion to discredit or impeach the witness or to stamp him as unworthy of belief.' *Commonwealth v. Turner,* 389 Pa. at 254, 133 A.2d at 194.

Fourth, the scope of the cross-examination may not be excessive. *Commonwealth v. Tucker, supra.* The end sought to be achieved by permitting cross-examination of a witness by the party calling him is to allow an opportunity to dispute those unexpected adverse statements made by that witness by showing to the jury that he stated otherwise on a prior occasion. The prior statement is not admitted as substantive testimony but for the limited purpose of establishing the inconsistency. Thus, where this device is used to introduce additional facts which the witness did not specifically controvert no permissible evidentiary purpose is served and such practice will not be tolerated.

*See also: Commonwealth v. Moore,* 462 Pa. 231, 340 A.2d 447 (1975); *Commonwealth v. London,* 461 Pa. 566, 337 A.2d 549 (1975).

Although the prior inconsistent testimony is limited to the purpose of impeaching the unexpected trial evidence and may not be used substantively, *Commonwealth v. Moore, supra; Commonwealth v. Thomas, supra; Common-*

*wealth v. Gee, supra,* the *responses* to those prior statements from the witness while he is on the stand under cross examination is of course substantive evidence, which if believed by the finder of fact, may be considered in determining the ultimate question of guilt or innocence.[2] *Cf. Commonwealth v. Crow,* 303 Pa. 91, 100, 154 A. 283, 286 (1931); 3A Wigmore, Evidence § 1044 (Chadbourn rev. 1970). From the foregoing, it is apparent that the exercise of the court's discretion in granting a request to cross-examine one's own witness should include a consideration as to:

(a) whether the testimony was unexpected;

(b) whether the testimony was contradictory;

(c) whether the testimony was harmful or injurious to the party calling the witness and beneficial to the opposing side; and

(d) whether the scope of cross-examination was excessive. *Commonwealth v. Thomas, supra.*

However, our cases have also in recent years recognized that "[t]he courts of this Commonwealth have been liberal in allowing a party to cross-examine his own witness *when it is believed that the interest of truth and justice so require."* *Commonwealth v. Tucker,* 452 Pa. 584, 588, 307 A.2d 245, 247 (1973) (emphasis added). *See, e.g., Commonwealth v. Smith,* 424 Pa. 544, 227 A.2d 653 (1967); *Commonwealth v. Turza,* 340 Pa. 128, 16 A.2d 401 (1940).

'While as a general rule a party who calls a witness represents him as being worthy of belief and cannot impeach him, *this rule has been considerably relaxed to prevent injustice and the tendency of the courts is to permit parties to show the truth without strict regard to technicalities.* [Emphasis in the original.]

**2.** We decline to adopt the reasoning of Judge Spaeth in *Commonwealth v. Loar,* 264 Pa.Super. 398, 399 A.2d 1110 (1979), that prior inconsistent statements may be used as substantive evidence. Such has never been and is not now the law in this Commonwealth. Instantly, Yancey's prior inconsistent statements did not supply substantive evidence of appellant's guilt. Rather, as discussed *infra,* direct testimony as well as Yancey's responses to the prosecutor's questioning regarding his prior inconsistent statements supplied sufficient proof to support the conviction.

*Commonwealth v. Smith,* 424 Pa. 544, 548, 227 A.2d 653, 655 (1967).

In the instant case, the Commonwealth contends that it called Mr. Yancey with the expectation that he would reiterate his prior testimony given at a coroner's inquest into the shooting death of Alvin Strozier, the deceased. Specifically, the Commonwealth asserts that it expected Mr. Yancey to testify that during the trip to the hospital, while passing the Hilltop Bar, appellant acknowledged to Yancey that he saw his (appellant's) assailant on Centre Avenue. The Commonwealth also states that it anticipated Yancey testifying to the fact that appellant had the gun in his hand and that he (Yancey) heard shots at that point in time.

Instead, on direct testimony, Mr. Yancey stated that while they were enroute to the hospital, appellant was merely complaining of pain and that he (Yancey) neither heard any shots nor saw appellant with a gun in his hand.

It was at this juncture the prosecutor pled surprise and requested leave of court to cross-examine its own witness. The prosecutor contended that Mr. Yancey was not testifying in a manner consistent with two prior statements in the prosecutions's possession. The trial judge examined both prior statements. One of these statements which was given to investigating detectives shortly after the event was ruled inadmissible for lack of authentication and is not presently in controversy. However, Mr. Yancey's testimony during the coroner's inquest into the deceased's demise was ruled sufficiently at odds with his trial testimony to allow the prosecutor to cross-examine Yancey. Defense counsel objected.

Appellant seeks to support his charge of an abuse of discretion contending Mr. Yancey's prior statements were not contradictory and were not injurious to the Commonwealth. These arguments are clearly without merit.

The contention that the witness' testimony was not contradictory is belied by a comparison between the witness' testimony at the coroner's inquest and his testimony at trial.

For example, at the coroner's inquest, Mr. Yancey was asked:

Question: Did Mr. Waller, on the trip down to the hospital, indicate to you that he saw the people who assaulted him?

Answer: Right before we got to the Hilltop, I heard Mr. Waller say, 'There he go, like that is one of them.' (T.T. 97).

However, at trial, when asked if he recalled testifying to this, Mr. Yancey unequivocally denied the statement. (T.T. 97). Moreover, at the coroner's inquest Mr. Yancey was asked:

Q. When you went past the Hilltop Bar, did he [Mr. Waller] have a gun in his hand?

A. I believe he did.

(T.T. 112).

At trial when asked whether Mr. Waller had a gun in his hand at the time in question, Mr. Yancey replied:

"I'm not for sure. I wasn't looking at him. I had my eyes on the road, because I was driving at the time and my hands on the wheel." (T.T. 103).

Secondly, there is little doubt that Mr. Yancey's trial testimony was injurious to the Commonwealth and beneficial to appellant. Mr. Yancey was the only witness available to the Commonwealth who was with appellant at the time of the fatal shooting. Concedely, the Commonwealth's case was based on circumstantial evidence. Without the benefit of Mr. Yancey's testimony at trial, the prosecution's case would have been severely damaged.

The trial judge noted in his opinion, as the direct examination of Mr. Yancey progressed he became more recalcitrant and hesitant in his responses, he became evasive and his overall demeanor changed. On this record it cannot be charged that the trial judge abused his discretion by ignoring the second and third consideration. Equally as clear, the extent of the cross-examination allowed could not be deemed to have been excessive. *Cf. Commonwealth v. Thomas,*

*supra; Commonwealth v. Tucker, supra.* The cross-examination was confined to the limited segment of time from when the Yancey vehicle turned around and headed for Central Medical Hospital and its arrival at that location. This coincided exactly with the area where Mr. Yancey's testimony varied from his earlier account.

The only factor that could be questioned was whether or not it is established on this record that the testimony of Mr. Yancey at trial was unexpected. Before cross-examination was allowed, the trial judge did grant defense counsel's request to cross-examine Mr. Yancey in order to determine whether the prosecutor was in fact "surprised" by Yancey's trial testimony. The following exchange took place:

### CROSS–EXAMINATION

BY MR. CARSIA: [defense counsel]

Q. Mr. Yancey, prior to testifying here today, did you have a chance to talk with the District Attorney here, Mr. Thomassey?

A. I talked to, not him, but another detective, three times before him, and I gave him the testimony.

Q. So you never had a chance to talk to Mr. Thomassey prior, then, prior to today?

A. No, I didn't.

Q. And when you talked to the detectives, was your testimony to that basically what you are testifying here today?

A. *It was the same.*

Notes of testimony, p. 100 (emphasis added).

The prosecution failed to challenge Mr. Yancey's assertion that he had given the exact same account of the event to the detectives, nor did the Commonwealth choose to offer any explanation as to why this information would not have been available to the trial assistant, if Mr. Yancey was in fact truthful in this regard. We need not, however, further pursue this area since appellant failed to challenge the legitimacy of the claim of surprise. To the contrary, defense

counsel, in his brief, concedes the surprise element by admitting that Yancey's testimony was probably unexpected. For the foregoing reasons appellant's first claim must be rejected.

■ Next, appellant challenges the sufficiency of the evidence. As recently stated in *Commonwealth v. Young*, 494 Pa. 224, 228, 431 A.2d 230, 232 (1981):

The well-established test for reviewing the sufficiency of the evidence is:

'[w]hether, accepting as true all the evidence and all [the] reasonable inferences therefrom upon which if believed the [finder of fact] could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime or crimes for which he has been convicted.' *Commonwealth v. Bayard*, 453 Pa. 506, 509, 309 A.2d 579, 581 (1973); *Commonwealth v. Paquette*, 451 Pa. 250, 301 A.2d 837 (1973). In this regard it must be noted that the finder of fact has the right to reject part or all of the [witness'] testimony even if uncontradicted. *Commonwealth v. Chermansky*, 430 Pa. 170 at 174, 242 A.2d 237 at 240.

*Commonwealth v. Taylor*, 461 Pa. 557, 560, 337 A.2d 545, 546 (1975), quoting *Commonwealth v. Coleman*, 455 Pa. 508, 510, 318 A.2d 716, 717 (1974).

Furthermore, "[w]hile it is clear that a criminal conviction may not be based upon mere surmise or conjecture, the Commonwealth's burden in proving a criminal offense or the elements thereof may be sustained by means of wholly circumstantial evidence." *Commonwealth v. Thomas*, 465 Pa. 442 at 446–47, 350 A.2d 847 at 849; *see also, Commonwealth v. Berrios*, 495 Pa. 444, 434 A.2d 1173 (1981).

Viewed in this light, we find the evidence sufficient. The Commonwealth's evidence supported an inference that the weapon in the possession of the appellant at the time of the shooting of the victim was the weapon that fired the fatal shot; that appellant was in the area at the time of the shooting, and that the decedent was part of the group that

44

had assaulted appellant earlier that day thereby providing a motive for the act. This testimony which was apparently believed by the fact finder was more than sufficient to support the verdict returned.

■■■ Appellant raises one final point in regard to the sufficiency of the evidence. Appellant argues in essence that Yancey's prior inconsistent statements were considered as substantive evidence rather than for impeachment purposes and that in the absence of the introduction of the statements of Yancey from the coroner's inquest, the evidence would be insufficient.

We note that even if the premise of this argument were correct and the trial court had in fact allowed certain evidence to be introduced for an improper purpose, that fact would not support his argument for a finding that the evidence was insufficient. In passing upon the sufficiency of the evidence, the evidence must be evaluated upon the entire trial record. *Commonwealth v. Smith*, 490 Pa. 329, 416 A.2d 494 (1980); *Commonwealth v. Hudson*, 489 Pa. 620, 414 A.2d 1381 (1980); *Commonwealth v. Kuebler*, 484 Pa. 358, 399 A.2d 116 (1979); *Commonwealth v. Smith*, 484 Pa. 71, 398 A.2d 948 (1979); *Commonwealth v. Meadows*, 471 Pa. 201, 369 A.2d 1266 (1977). The record will not be diminished and evidence actually received must be considered whether the trial rulings thereon were right or wrong. *Commonwealth v. Cohen*, 489 Pa. 167, 413 A.2d 1066, 1072 (1980); *Commonwealth v. Tabb*, 417 Pa. 13, 16, 207 A.2d 884, 886 (1965). Accord, *Commonwealth v. Kuebler, supra*, 484 Pa. at 361 n.*, 399 A.2d 117 n.*; *Commonwealth v. Meadows, supra*.

Nevertheless, here there was no question that competent evidence amply supported the verdict. Appellant seeks to ignore Mr. Yancey's responses to questions put to him concerning his testimony at the coroner's inquest. His testimony at this trial was admissible substantively and together

with the other evidence supplied the basis for the guilty verdict.

The Judgment of Sentence is affirmed.

ROBERTS, J., concurred in the result.