507 A.2d 66

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Anthony Edward BRADY, Appellee.**

Supreme Court of Pennsylvania.

Argued Dec. 3, 1985.

Decided March 26, 1986.

124

Robert B. Sacavage, Dist. Atty., Joseph W. Toddy, Mount Carmel, for appellant.

Christopher J. Foust, Milton, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDER-MOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

We granted the Commonwealth's petition for allowance of appeal to reconsider this Court's long-standing rule that prior inconsistent statements of a non-party witness at trial cannot be used as substantive evidence to prove the truth of the matters asserted therein but may only be used for the limited purpose of impeaching the credibility of the witness. We now discard this antiquated rule and hold that such statements may be used as substantive evidence where the declarant is a witness at trial and available for cross-examination.

On September 14, 1980, the body of George Hoffman was discovered at about 7:30 a.m. at the Wilson Manufacturing plant in Sunbury where he was employed as a security guard. Appellee, Anthony Edward Brady, was arrested later that day and charged with the stabbing death of George Hoffman. Appellee was sixteen years of age at the time of trial, but was tried as an adult before a jury in the Court of Common Pleas of Northumberland County.

Evidence introduced at trial disclosed the following events. In the early morning hours of September 14, 1980, appellee awakened his girlfriend, Tina Traxler, at her residence in Sunbury and persuaded her to take a ride with him. The two drove around for a while until, near an area outside of Sunbury known as the Shale Pit, appellee ran the car into a ditch alongside a dirt road.

Unable to extricate the car from the ditch, appellee and Ms. Traxler began to walk back to Sunbury and, along the way, walked by the Wilson Manufacturing plant. They climbed the fence surrounding the plant and entered it through a side door. Once inside, appellee was attempting to pry open a dollar-bill change machine when George Hoffman, the plant security guard, encountered him and Ms. Traxler. A scuffle ensued during which appellee stabbed the victim who fell to the floor. Appellee and Ms.

Traxler then left the plant and returned to Sunbury to their friends' home.

The most damaging evidence against appellee was a tape-recorded statement given by Tina Traxler to the police on the evening of September 14, 1980. That statement set forth the events recounted above.[1] At trial, however, Tina Traxler, called as a witness for the Commonwealth, recanted the tape-recorded statement and testified that neither she nor appellee had entered the Wilson Manufacturing plant on September 14, 1980 after the car had broken down. Over objection, the Commonwealth was permitted to introduce the tape-recorded statement as substantive evidence, not merely to impeach Ms. Traxler's credibility.[2]

The jury returned a verdict of guilty of second-degree murder, burglary and criminal mischief on June 4, 1981. Post-verdict motions were denied by the court, per the Honorable Samuel C. Ranck, and appellee was sentenced to a term of life imprisonment on the murder conviction and a concurrent term of imprisonment of six months to one year on the criminal mischief.[3] Appellee submitted forty-two issues for review on appeal to the Superior Court, which found it necessary to address only two. A panel of the Superior Court reversed appellee's judgments of sentence and remanded the case for a new trial. 338 Pa.Super. 137, 487 A.2d 891 (1985) (Opinion per McEwen, J., joined by Beck and Cercone, JJ.).

Constrained by decisions of this Court, the Superior Court applied the "law in Pennsylvania that prior inconsistent statements of a non-party witness are not admissible as

1. Significant portions of the taped statement were corroborated by physical evidence and other testimony.

2. The Commonwealth had filed a pretrial application requesting that the tape-recorded statement be ruled admissible since Tina Traxler had filed an affidavit recanting the statement prior to trial. The lower court granted the application. Defense counsel opposed the application and renewed his objections at trial.

3. Although the court initially sentenced appellee to an additional term of imprisonment of five to ten years on the conviction for burglary, that sentence was subsequently vacated because the burglary conviction was found to have merged for sentencing purposes.

substantive evidence of the truth of the matter asserted therein," 338 Pa.Superior Ct. at 140, 487 A.2d at 892 (citations omitted), and held that the lower court erred in admitting Tina Traxler's tape-recorded statement as substantive evidence. That court further rejected the Commonwealth's argument that any error was harmless. The Superior Court also addressed appellee's argument that the trial court erred in allowing the Commonwealth to impeach its own witness and agreed with appellee that a prerequisite to allowing a party to cross-examine his own witness is a plea of "surprise" due to unexpected testimony of the witness. Since Tina Traxler had recanted her tape-recorded statement prior to trial (*see* note 2 *supra*), the Superior Court held that the trial court had erred because "her more recent version of the incident was not 'unexpected.' Thus, it was improper to plead surprise." *Id.*, 338 Pa.Superior Ct. at 143–144, 487 A.2d at 894.

Until now, this Court has adhered to the "orthodox" rule limiting the use of such prior inconsistent statements of a non-party witness to impeachment.[4] *Commonwealth v. Gee,* 467 Pa. 123, 354 A.2d 875 (1976); *Commonwealth v. Waller,* 498 Pa. 33, 39 n. 2, 444 A.2d 653, 656 n. 2 (1982); *Commonwealth v. Tucker,* 452 Pa. 584, 307 A.2d 245 (1973). This rule has been widely discredited by most legal scholars and commentators that have considered its efficacy. *See, e.g.,* McCormick, *Evidence* (2d Ed.) § 251; 3A Wigmore, *Evidence* § 1018 (Chadbourn rev. 1970); Graham, *Employing Inconsistent Statements for Impeachment and as Substantive Evidence,* 75 Mich.L.Rev. 1565 (1976–77); *California v. Green,* 399 U.S. 149, 154 n. 6, 90 S.Ct. 1930, 1933 n. 6, 26 L.Ed.2d 489 (1970) (and authorities cited therein). That rule has also been the recipient of recent heavy criticism by several members of this Court. *See Commonwealth v. Gee, supra* at 467 Pa. 136, n. 5, 354 A.2d 875

---

**4.** Of course, it has long been the law in Pennsylvania, as well as all other jurisdictions, that prior inconsistent statements of a party who is a witness in a proceeding are admissible as substantive evidence against that party. *See e.g., Bizich v. Sears Roebuck & Co.,* 391 Pa. 640, 139 A.2d 663 (1958); *Schweinberg v. Irwin,* 379 Pa. 360, 109 A.2d 181 (1954); McCormick, *Evidence* (2d ed.) § 262.

(plurality opinion of Eagen, J., joined by O'Brien, J.) and at 467 Pa. 143–146, 354 A.2d 875 (dissenting opinion of Roberts, J., joined by Manderino, J.); *Commonwealth v. Thirkield,* 502 Pa. 542, 467 A.2d 323 (1983) (McDermott, J., dissenting opinion). Indeed, the criticism expressed by four Justices in *Gee* led the Superior Court to conclude that "we believe we should reexamine, and discard, the existing Pennsylvania rule" in favor of the "modern" rule allowing the use of prior inconsistent statements of a non-party witness as substantive evidence. *Commonwealth v. Loar,* 264 Pa.Super. 398, 399 A.2d 1110, 1117 (1979). However, *Loar* was subsequently disapproved by this Court in a footnote in *Commonwealth v. Waller, supra* wherein we declined to adopt the modern rule, stating: "Such has never been and is not now the law in this Commonwealth." 498 Pa. at 39 n. 2, 444 A.2d at 656 n. 2.

Upon further reflection and consideration of the shortcomings of the orthodox rule, as clearly illustrated by the circumstances of this case, we reject that rule and embrace the modern rule as the law of this Commonwealth. The traditional view is that a prior statement of a witness is hearsay if offered to prove the truth of the matters asserted therein. The orthodox rule deems hearsay generally, and prior inconsistent statements specifically, too unreliable to be admitted as substantive evidence because the declarant was (1) not under oath, (2) not subject to cross-examination at the time the statement was made, and (3) not in the presence of the trier of fact when the statement was made. *McCormick, supra* at § 251; *Wigmore, supra* at § 1018; *Graham, supra* at 1568. Each prong of this threefold rationale has been logically and thoroughly debunked by the scholars and by the growing number of jurisdictions adopting the modern rule governing prior inconsistent statements of non-party witnesses by statute, rule or case law.

The simple fact is that "the usual dangers of hearsay are largely nonexistent where the witness testifies at trial." *California v. Green, supra* at 399 U.S. 155, 90 S.Ct. at 1933. By hypothesis in these situations, the out-of-court

declarant is now a witness *in-court* where he or she is placed under oath, subject to cross-examination and under observation by the finder of fact. *See Commonwealth v. Thirkield, supra* at 502 Pa. 542, 467 A.2d 323 (McDermott, J. dissenting: "the fact that [the oath and cross-examination requirements] are supplied in the current trial defuses hearsay concerns and provides the fact-finder with ample opportunity to determine truth."). Indeed, the cross-examination to which a recanting witness is subjected will likely be meaningful and vigorous since the witness is already "on the spot" in having to explain the discrepancies between earlier statements and direct testimony, or deny that the earlier statements were made at all.

Earlier decisions expressed some concern that the cross-examination was not contemporaneous with the out-of-court declaration. *See, e.g., State v. Saporen,* 205 Minn. 358, 285 N.W. 898 (1939); *McCormick, supra* at § 251 n. 64. This concern is unfounded for, as the United States Supreme Court has observed, the "most successful cross-examination at the time the statement was made could hardly hope to accomplish more than has already been accomplished by the fact that the witness is now telling a different, inconsistent story. ..." *California v. Green, supra* at 399 U.S. 159, 90 S.Ct. at 1935.

The availability of cross-examination at trial also assures a meaningful opportunity for the trier of fact to observe the declarant who has been called upon and sworn as a witness and questioned as to the discrepancy between the prior statement and the direct testimony. The trier of fact may bring to bear his or her sensory observations, experience, common sense and logic upon the witness to assess credibility and to determine the truth and accuracy of both the out-of-court declarations and the in-court testimony. In one of the earlier opinions rejecting the orthodox position, Judge Learned Hand made this classic statement: "If, from all that the jury see of the witness, they conclude that what he says now is not the truth, but what he said before, they are none the less deciding from what they see and hear of

that person and in court." *DiCarlo v. United States*, 6 F.2d 364, 368 (2d Cir.1925).

Moreover, the prior statement can be viewed as possessing superior indicia of reliability as it was rendered at a point in time closer to the event described—usually much closer—when memory will presumably be fresher and opportunity for fabrication lessened. *McCormick, supra* at § 251; *Graham, supra* at 1571. Indeed, this is the rationale behind the past recollection refreshed exception to the hearsay rule. *McCormick, supra* at § 301.

The foregoing criticisms, lodged in reason and logic, have eroded the foundations of the orthodox view prohibiting the use of prior inconsistent statements of a non-party witness as substantive evidence, and have persuaded a growing number of jurisdictions to discard that outmoded rule (although the prerequisites to use of such statements as substantive evidence may vary). *See, e.g., DiCarlo v. United States*, 6 F.2d 364 (2d Cir.1925); Fed.R.Evid. 801(d)(1) (compromise position requiring former statement to have been made under oath); Cal.Evid.Code § 1235 *and People v. Freeman*, 20 Cal.App.3d 488, 97 Cal.Rptr. 717 (1971); *Gibbons v. State*, 248 Ga. 858, 286 S.E.2d 717 (1982); *Vogel v. State*, 96 Wis.2d 372, 291 N.W.2d 838 (1980); N.J.R.Evid. Rule 63(1), N.J.Rev.Stat. § 2A:84A *and State v. Provet*, 133 N.J.Super. 432, 337 A.2d 374 (1975); *State v. Skinner*, 110 Ariz. 135, 515 P.2d 880 (1973); *Nugent v. Commonwealth*, 639 S.W.2d 761 (Ky.1982); Kan.Stat.Ann. 60–460A *and State v. Lott*, 207 Kan. 602, 485 P.2d 1314 (1971); *Smith v. State*, 400 N.E.2d 1137 (Ind.Ct.App.1980); Utah R.Evid. Rule 63(1); Uniform R.Evid. Rule 801(d)(1); *see generally* Annot., *Use or Admissibility of Prior Inconsistent Statements of Witnesses As Substantive Evidence of Facts To Which They Relate In Criminal Case—Modern State Cases*, 30 A.L.R. 4th 414 (1984).

We are persuaded that the modern view is the better, more principled view. As we have seen, the hearsay concerns are virtually nonexistent where the out-of-court declarant is a witness in a judicial proceeding. On the other

hand, the damage done to the integrity of the fact-finding process by continued adherence to the orthodox rule would be significant. We agree with the salient observations of Justice Roberts that the orthodox position

serves only to keep relevant and reliable evidence from the jury. Its result serves no greater principle than judicial inertia. I believe that a trial is, fundamentally, a search for an objective account of the events upon which the criminal charges are based. An evidentiary rule which forces the searcher to ignore relevant clues whose reliability can be tested by cross-examination serves no purpose.

*Commonwealth v. Gee, supra,* 467 Pa. at 146, 354 A.2d 875 (dissenting opinion). Accordingly, we reverse this Court's previous position and hold that otherwise admissible prior inconsistent statements of a declarant who is a witness in a judicial proceeding and is available for cross-examination may be used as substantive evidence to prove the truth of the matters asserted therein.

As the lower court stated, the "case at bar presents a classic case to illustrate why the prior statement should be admitted substantively." Slip opinion, September 21, 1982, at 21. Tina Traxler initially talked to state and local police on the afternoon of September 14, 1980. At that time, she told police that the car she and appellee had been riding in had gotten stuck in a ditch and that they had walked back to Sunbury past Wilson Manufacturing plant without entering the plant. She voluntarily rode with police out to the area to show them where she and appellee had walked. When they got to the area, however, Ms. Traxler led police into the plant, admitted she and appellee had entered the plant and that appellee had scuffled with and stabbed the security guard.

Taken back to the police station, Ms. Traxler agreed to make a tape-recorded statement. Tina Traxler's attorney was present at the station along with her mother. The attorney questioned both Ms. Traxler and her mother to assure that the statement was being given knowingly, vol-

untarily and with understanding of her rights and options. As indicated, this statement admitted that she and appellee had entered the plant and that appellee had stabbed the security guard who had surprised appellee while attempting to pry open the dollar-bill change machine. Two days later, Ms. Traxler reiterated essentially the same account of the events of September 14, 1980.

A few weeks later, however, Ms. Traxler recanted her tape-recorded statements and, eventually, filed an affidavit recanting the statement and denying that she and appellee had entered the Wilson Manufacturing plant.

At trial, the Commonwealth called Tina Traxler to the witness stand. On direct examination, she repeated her recanted version of events denying that she and appellee had entered the plant. She testified that the two walked past the plant on their way to their friends' house in Sunbury where they stayed until police arrived in the morning. At this point, the Commonwealth "cross-examined" Ms. Traxler on the basis of her prior inconsistent tape-recorded statement over objection of defense counsel, the court having ruled that Ms. Traxler was a hostile witness. Notes of Testimony (N.T.) May 28, 1981 at 197. Tina Traxler admitted that she voluntarily gave the statement to the police on September 14, 1980. The Commonwealth was also permitted to introduce the entire tape-recorded statement as substantive evidence to prove the truth of the matters asserted therein (and the jury was so instructed).

On cross-examination, defense counsel questioned Ms. Traxler at length in an attempt to buttress her trial testimony and discredit the tape-recorded statement. The explanation elicited for the discrepancy was that Tina Traxler was afraid of the police, and of one officer in particular, and told them what they wanted to hear. She testified that, at the plant, the police had asked her "leading" questions (*e.g.,* "Is this where Tony Brady stabbed the guard?") and that she had responded with yes/no answers. Her fears continued at the police station where, despite the presence of her attorney and her mother, she felt pressured and continued

to give the police what they wanted to hear, instead of the truth as she subsequently stated it at trial. Extensive redirect and recross-examination followed.

In its opinion denying appellee's post-verdict motions, the lower court stated:

Tina Traxler gave a statement within twenty-four hours of George Hoffman's death. Several weeks later she radically altered her version of the events. Each statement was purportedly truthful when given. Yet by the fortuity of being last, only one statement is admitted under the common law rule. To not permit the jury to observe Tina Traxler finally explain and/or deny the statements is to take away perhaps their most powerful tool in evaluating her veracity. We consider the statement to have been used properly at trial and urge our appellate courts to clarify Pennsylvania law on this point.

■ We accept that court's invitation to hold that the tape-recorded statement was properly admitted as substantive evidence. The out-of-court declaration was rendered under highly reliable circumstances assuring that they were voluntary, knowing and understanding. Moreover, and more importantly, the declarant testified at trial (her testimony consisted of 200 pages of transcript) and was extensively questioned by both the prosecutor and defense counsel as to the respective validity of each statement and as to the discrepancy between them. The jury had more than adequate opportunity to observe the witness' demeanor, hear her testimony and explanations and assess her credibility. Under these circumstances, the trial court did not err in allowing Tina Traxler's tape-recorded statement to be introduced as substantive evidence.

■ The Superior Court also addressed, and agreed with, appellee's "argument that the trial court erred when it permitted the Commonwealth to impeach its own witness ... using the prior inconsistent statement ...." 338 Pa.Superior Ct. 142, 487 A.2d at 894. In light of our holding as to the use of prior inconsistent statements as substantive evi-

dence, this ruling of Superior Court must obviously be reversed. We agree with the trial court, which stated:

We conclude that it was well within the Court's discretion to permit the cross-examination of Tina Traxler. The foregoing cases emphasize that the parties must be afforded the opportunity to present the truth unhindered by technicalities. This is also a primary consideration in permitting the jury to use a prior statement as substantive evidence. It would be a technicality indeed to permit the use of the statement as substantive evidence but not allow the cross-examination of one's own turncoat witness, regardless of surprise. We note further that the weight of scholarly authority is in accord with this result. See 3A Wigmore, *Evidence* § 902 et seq. (Chadbourn rev. 1970).

Slip op. at 28.

■ The Superior Court did, however, err in elevating one factor in the determination of when a party should be permitted to impeach its own witness—the factor of surprise—to an indispensable element. It is true that, in *Commonwealth v. Turner*, 389 Pa. 239, 133 A.2d 187 (1957), upon which Superior Court relied, this Court stated: " 'Generally, to entitle the party calling the witness to relief from the situation caused by the witness's adverse testimony, it is essential that such party be really surprised by such testimony.' " *Id.*, 389 Pa. at 253–254, 133 A.2d at 193. However, the element of surprise is not an absolute requirement in the exercise of the court's discretion to allow a party to impeach his or her own witness, as subsequent cases of this Court have made clear. In *Commonwealth v. Waller, supra,* we stated:

[O]ur cases have also in recent years recognized that "[t]he courts of this Commonwealth have been liberal in allowing a party to cross-examine his own witness *when it is believed that the interest of truth and justice so require.*" (citations omitted)

While as a general rule a party who calls a witness represents him as being worthy of belief and cannot

impeach him, *this rule has been considerably relaxed to prevent injustice and the tendency of the courts is to permit parties to show the truth without strict regard to technicalities.* (citations omitted).

498 Pa. at 39, 444 A.2d at 656–57. And in *Commonwealth v. Gee, supra,* it was stated that: "Pennsylvania courts have frequently permitted parties to contradict or impeach witnesses called by them without a strict requirement of surprise when the interests of truth and justice seem to require it." 467 Pa. at 137, 354 A.2d at 881.

From all of the foregoing, the trial court did not err in allowing the Commonwealth to impeach the credibility of its witness, Tina Traxler, with her prior inconsistent statement nor did the court err in allowing that statement to be used as substantive evidence. Accordingly, we reverse the order of the Superior Court and remand this case to that court for disposition of appellee's remaining issues on appeal.

NIX, C.J., filed a concurring opinion.

FLAHERTY, J., filed a dissenting opinion joined by ZAPPALA, J.

NIX, Chief Justice, concurring.

I have long been inclined to discard the well-established rule in this Commonwealth that a prior inconsistent statement may not be used as substantive evidence, and have urged the wisdom of the modern rule. Therefore, I am pleased to see that the Court has now altered its position.

I am compelled to write separately, however, to express my concern about the jurisprudential precedent being set in this case. Our prior rule was settled law and had been reaffirmed even in recent pronouncements. *See, e.g., Commonwealth v. Waller,* 498 Pa. 33, 444 A.2d 653 (1982); *Commonwealth v. Gee,* 467 Pa. 123, 354 A.2d 875 (1976); *Commonwealth v. Tucker,* 452 Pa. 584, 307 A.2d 245 (1973). The trial court was therefore bound to apply it, *see, e.g., Commonwealth v. Schaller,* 493 Pa. 426, 426 A.2d 1090 (1981); *Commonwealth v. Mason,* 456 Pa. 602, 322 A.2d

357 (1974); *Commonwealth v. Provident Trust Co. of Philadelphia,* 319 Pa. 385, 180 A. 16 (1935), and its decision to ignore controlling precedent should not be allowed to pass without comment.

Although the concerns that the exclusion of the prior statement as substantive evidence would severely jeopardize the prosecution's case and that an acquittal would preclude review of the issue are understandable, those concerns do not justify the course taken by the trial court. An appropriate avenue of appellate review was, in fact, available. The Commonwealth's pretrial application to rule the prior statement admissible should have been denied. The Commonwealth could have then petitioned for permission to appeal from that interlocutory order, and obtained the trial court's certification that the evidentiary issue was controlling. 42 Pa.C.S. § 702(b); Pa.R.A.P. 1311. Thus a determination by an appellate court could have been obtained before trial and without willful disregard for the binding decisions of this Court.

The Court today condones the trial court's actions, accepting its "invitation" to change the law. Regardless of how laudable the trial court's intentions may have been, however, its unauthorized refusal to apply existing law cannot be tolerated. To permit such a practice will throw the administration of justice and the expectations of litigants into utter confusion.

FLAHERTY, Justice, dissenting.

I dissent to the holding in this case that a witness's prior inconsistent statement may be introduced at trial as substantive evidence. Until today, that has never been the law of Pennsylvania. The rule discarded today by the majority is indeed "antiquated," as are many of the hard-wrought concepts which enhance our traditional definition of due process.

It is generally agreed that the theory of the use of prior inconsistent statements at trial is that such statements may be introduced into evidence for the purpose of discrediting

the present testimony of a witness. The witness said one thing earlier and now says something else. As Wigmore puts it:

> We simply set the two [statements] against each other, perceive that both cannot be correct, and immediately conclude that he has erred in one or the other—but without determining which one. It is the repugnancy and inconsistency that demonstrates his error, and not the superior credibility of the prior statement. Thus, we do not necessarily accept his former statement as replacing his present one.

IIIA Wigmore, *On Evidence* (Chadbourn Rev.1970) § 1018.

The question which arises at this point in the analysis is whether the prior statements *may* be utilized as substantive evidence, and not merely to indicate that the witness is unreliable. The majority would permit the substantive use of prior inconsistent statements because the witness is present in court, under oath, able to explain the circumstances of the prior statement, subject to cross-examination, and because the prior statement will normally have been made closer in time to the incident in question, and therefore, presumably is more reliable.

These observations notwithstanding, it is nevertheless the Commonwealth's obligation to *establish in court*, not at some prior time, *every element of the crime* with which the defendant is charged. If the Commonwealth's case is not substantial enough to stand alone, based on reliable evidence presented *here* and *now* to the court, but instead must rely on the use of prior statements *made out-of-court* which are inconsistent with those presently being *made in court* to prove any element of the crime, the case should fail, for the prior statements, if made at all, may or may not be adequately, fully, and competently presented and explained in the present forum. This uncertainty raises the requisite reasonable doubt as to the trustworthiness and value of the prior statements as *substantive evidence*, and the rule announced by the majority works to "bootstrap" the guilt of the accused.

138

We have taken a long step backwards by the decision today.

I would reverse the order of Superior Court and grant a new trial.

ZAPPALA, J., joins this dissenting opinion.