J-S51029-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN N. IN | : | |
| | : | |
| | : | No. 2858 EDA 2017 |

Appeal from the PCRA Order August 18, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004829-2007

BEFORE: DUBOW, J., NICHOLS, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY NICHOLS, J.: **FILED APRIL 23, 2019**

Appellant John N. In appeals from the order denying his timely first petition under the Post Conviction Relief Act[1] (PCRA), after a prior panel of this Court remanded the matter for an evidentiary hearing.[2] Appellant claims trial counsel was ineffective for: (1) failing to object to the Commonwealth's attempt to present Dyshon Marable (Marable) as a witness at trial; (2) failing to request a cautionary instruction that the jury should not infer Appellant's guilt from Marable's refusal to testify; (3) stipulating that Marable entered into a guilty plea for the robbery at issue; (4) failing to request a cautionary instruction that the jury should not infer Appellant's guilt based on Marable's guilty plea; (5) failing to object to testimony about Marable's post-arrest

---

[1] 42 Pa.C.S. §§ 9541-9546.

[2] **Commonwealth v. In**, 3021 EDA 2013 (Pa. Super. filed Oct. 26, 2016) (unpublished mem.).

statement to police; and (6) failing to object to comments about Marable during the Commonwealth's closing argument. We affirm.

The prior panel of this Court set forth the relevant facts and procedural history of this appeal as follows:

> On March 7, 2007, three men entered Vuthary Yun's house, and one of the men pointed a gun at his head. The man with the gun pushed Yun into the basement and demanded money and jewelry. Yun's daughter, Dina Khem, who was in her bedroom in the basement, called 911 when she heard a man's voice yelling at her father. A few minutes later, when Dina heard police upstairs, she exited her room and walked to the basement steps, where she observed her father and Appellant at the top of the steps. When Dina attempted to speak to her father, Appellant turned to face her, pointed the gun at her, and told her to "shut the fuck up." Dina testified that she observed Appellant for approximately two minutes before returning to her room. While Yun was being held in the basement, co-conspirators Jerry Jean and [Marable] were on the second floor, robbing Dina's younger sister, Christina Khem, of her jewelry.

> When Officer Roger Birch arrived outside of the victims' home, he observed Appellant kneeling beside a white Nissan Altima. Appellant entered the vehicle and sped eastbound. Officer Birch pursued him in his patrol car for approximately one block before Appellant crashed the Altima into a house. Appellant exited the vehicle and fled on foot before being apprehended by police. Police later took Dina to the patrol car in which Appellant was being held, and Dina identified him as the gunman who held her father in the basement.

> Officer Kevin Cannon observed co-conspirator Jean hiding between two parked cars near the white Nissan Altima. Police arrested Jean shortly thereafter and found pieces of a latex glove in his sweatshirt. Co-conspirator Marable was later found hiding in a closet on the second floor of the victims' home.

> Police recovered a 0.9 mm semi-automatic handgun from the driver's side of the white Nissan Altima. Latex gloves and three traffic tickets listing the name Jerry Jean were also recovered from

- 2 -

the vehicle. Another handgun and a latex glove were found in a shed in the victims' backyard.[fn2] Later, Yun discovered that sixty dollars had been taken from his wallet.

> [fn2] Jean had hidden in the backyard shed after fleeing from the victims' house.

Subsequently, Appellant was charged with burglary, robbery, possession of an instrument of crime, criminal conspiracy, and violations of the Uniform Firearms Act, 18 Pa.C.S.A. §§ 6101-6127. The case proceeded to a jury trial, at which the Commonwealth sought to present the testimony of Appellant's co-conspirator Marable. On the second day of trial, outside of the jury's presence, Marable indicated to the Commonwealth and the trial court that he would not testify against Appellant and, if called to the stand, would remain silent.[fn3] Ultimately, the trial court held Marable in contempt and sentenced him to six months' imprisonment.

> [fn3] Marable's attorney advised Marable that he did not have a Fifth Amendment right against self-incrimination because Marable already had pled guilty in this case. Marable's attorney relayed to the trial court that Marable would not testify because Marable had received several threats to his life and health.

After Marable exited the courtroom, the Commonwealth informed the trial court that it still intended to call him as a witness. The Commonwealth anticipated that Marable would remain silent and, to identify Marable for the benefit of the jury, it would request Sheriff Guess to read Marable's wristband. The Commonwealth also anticipated that it would ask Detective Hopkins to testify about the fact that Marable gave a post-arrest statement.[fn4]

> [fn4] The parties agreed that the content of Marable's post-arrest statement need not be disclosed to the jury.

Upon the jury's return, the Commonwealth called Marable to testify. Marable remained silent. Sheriff Guess identified Marable by examining Marable's prison identification card. Marable then was escorted from the courtroom. Thereafter, the Commonwealth informed the trial court and the jury that it had entered into a stipulation with Appellant's attorney with respect to Marable's guilty plea. Specifically, the Commonwealth noted:

> There's been a stipulation by and between counsel that in the case of **Commonwealth v. Marable**, Common Pleas Court No. 51-CR-0004827-2007 . . ., before the Honorable Judge Byrd, [Marable] pled guilty to three counts of robbery. Victims being Vuthary Yun, Dina Khem, and Christina Khem. Pled guilty to burglary of the house at 720 Mifflin Street. Pled guilty to possession of an instrument of crime, [and] conspiracy regarding the incident that happened on March 7th, 2007. In exchange [for] his guilty plea . . . [Marable] was sentenced to a period [of] no less than five [and] no more than ten years' incarceration.

Trial counsel did not request any cautionary instruction informing the jury that it should not infer Appellant's guilt from Marable's admitted guilt (guilt by association) and refusal to testify.

The Commonwealth then offered the testimony of Detective Hopkins, who testified that Marable gave a post-arrest statement after being Mirandized.[fn5, fn6]

[fn5] **See Miranda v. Arizona**, 384 U.S. 436 (1966).

[fn6] It appears that Detective Conn likewise testified about Marable providing a post-arrest statement.

During its closing argument, the Commonwealth stated without objection by Appellant's attorney:

> And you saw [Marable], he wouldn't even say his name, let alone be sworn in. Well, why? He took a plea, he's serving his time. He's not going to snitch on his buddy, no matter what the consequences to him. You saw, you saw the attitude he gave everybody including the Judge. Well, that's his boy, I brought him down here. He's not going to testify for the Commonwealth, right?

On September 15, 2008, the jury found Appellant guilty of conspiracy, burglary, two counts of robbery, possession of an instrument of crime, and violating Sections 6106 and 6108 of the Uniform Firearms Act. Pursuant to Appellant's motion to sever the charge of violating Section 6105 of the Uniform Firearms Act, the trial court conducted a separate bench trial and found him guilty of that charge. On December 19, 2008, the trial court sentenced

- 4 -

Appellant to an aggregate term of twenty-five to fifty years' imprisonment followed by ten years' probation.

[O]n July 23, 2010, a panel of this Court affirmed Appellant's judgment of sentence. On January 5, 2011, our Supreme Court denied Appellant's petition for allowance of appeal.

On July 15, 2011, Appellant *pro se* filed [his first] PCRA petition. The PCRA court appointed counsel, who filed an amended PCRA petition on October 4, 2012, raising a number of ineffective assistance of counsel claims. Appellant alleged that his trial counsel was ineffective for failing to object to the Commonwealth's presentation of Marable as a witness at trial when the Commonwealth knew that Marable was not going to testify. Specifically, Appellant alleged that Marable's presentation "was only undertaken so as to unfairly prejudice [Appellant] by advancing guilt through association." Appellant alleged that his trial counsel was ineffective because he stipulated to Marable's guilty plea arising out of the home invasion robbery at issue here. Appellant also alleged trial counsel's ineffectiveness on the grounds that counsel did not object to the detectives' testimony that Marable gave a post-arrest statement. Finally, Appellant alleged ineffectiveness because trial counsel did not object to the Commonwealth's remarks during its closing argument.

\* \* \*

On September 6, 2013, the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss Appellant's petition. On September 18, 2013, Appellant filed a response to the PCRA court's Rule 907 notice, raising an ineffectiveness claim against his PCRA counsel. On October 11, 2013, the PCRA court dismissed Appellant's petition without a hearing. Appellant timely appealed to this Court.

*In*, 3021 EDA 2013, at 2-7 (record citations omitted).

The prior panel of this Court vacated the PCRA court's order and remanded the matter for an evidentiary hearing, noting:

[G]iven the complexity of the claims raised and the dearth of a record below, we are unable to engage in a meaningful appellate review. Specifically, the PCRA court failed to conduct an

- 5 -

evidentiary hearing on Appellant's ineffectiveness claims and render necessary factual findings. We therefore cannot assess trial counsel's tactical reasons for withholding objections. As a result, we must vacate the PCRA court's order dismissing Appellant's PCRA petition and remand the matter to the PCRA court to conduct an evidentiary hearing to address fully the claims identified above.

*Id.* at 9 (footnote omitted).

Upon remand, the PCRA court conducted an evidentiary hearing on July 7, 2017, and Appellant called his trial counsel as a witness. Trial counsel testified as to his reasons for not objecting to the Commonwealth's presentation of Marable as a witness, entering into the stipulation regarding Marable's guilty plea, failing to request cautionary instructions, failing to object to the testimony from the police witnesses, and failing to object to the Commonwealth's closing argument. At the conclusion of trial counsel's testimony, the PCRA court held the matter under advisement. On August 18, 2017, the PCRA court announced its findings of fact and conclusions of law on the record and denied Appellant's PCRA petition.

Appellant timely filed a notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The PCRA court filed a responsive opinion, finding that trial counsel "had a reasonable strategic basis for each of his challenged decisions, all designed to effectuate [Appellant's] best interest." PCRA Ct. Op., 1/9/18, at 10. The court concluded that trial counsel's decisions advanced his theory of the case, which was that Appellant "was not involved in the home invasion and it was committed by others." *Id.*

- 6 -

Appellant now raises one issue for our review:

Trial counsel made a series of objectively unreasonable decisions regarding the prosecutor's attempt to have Dyshon Marable testify against [Appellant]. Individually and cumulatively, these unreasonable decisions prejudiced [Appellant] because they allowed the prosecutor to present and the jury to consider irrelevant, inadmissible, and highly prejudicial evidence regarding Mr. Marable's pretrial statement and guilty plea without being subjected to cross-examination and without instructing the jury it could not consider Mr. Marable's guilty plea as substantive evidence of [Appellant's] guilt. Had trial counsel lodged timely objections there is a reasonable probability the trial court would have prohibited the prosecutor from presenting Mr. Marable as a Commonwealth witness as well as the other evidence relating to his guilty plea and pretrial statement. It would have also struck the prosecutor's impermissible closing arguments relating to Mr. Marable's refusal to testify, statement, and guilty plea. Trial counsel did not have a reasonable basis not to make the individually and collectively [sic], the introduction and consideration of this evidence undermines confidence in the jury's guilty verdicts warranting a new trial and the PCRA court erred when it refused to grant a new trial because the record supported [Appellant's] right to a new trial based on trial counsel's ineffectiveness.

Appellant's Brief at 5 (citations omitted). Although Appellant's brief lists one issue, he actually presents six distinct arguments of ineffective assistance of counsel related to Marable.

Our review the denial of a PCRA petition is limited to the examination of "whether the PCRA court's determination is supported by the record and free of legal error." **Commonwealth v. Miller**, 102 A.3d 988, 992 (Pa. Super. 2014) (quotation marks and citation omitted). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." **Commonwealth v. Lawson**, 90 A.3d 1, 4 (Pa. Super. 2014)

- 7 -

(citation omitted). We review the PCRA court's legal conclusions *de novo*. *See Miller*, 102 A.3d at 992.

We presume that the petitioner's counsel was effective. *Commonwealth v. Williams*, 732 A.2d 1167, 1177 (Pa. 1999). To establish a claim of ineffectiveness, a petitioner "must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Commonwealth v. Turetsky*, 925 A.2d 876, 880 (Pa. Super. 2007) (citation omitted). A petitioner must establish (1) that the underlying claim has arguable merit; (2) that counsel lacked a reasonable basis for his action or inaction; and (3) but for the act or omission in question, the outcome of the proceedings would have been different. *Commonwealth v. Washington*, 927 A.2d 586, 594 (Pa. 2007). "A claim of ineffectiveness may be denied by a showing that the petitioner's evidence fails to meet any of these prongs." *Id.* (citation omitted).

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit[.] Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." *Commonwealth v. Smith*, 167 A.3d 782, 788 (Pa. Super. 2017) (citations and quotation marks omitted).

"With regard to the second, reasonable basis prong, we do not question whether there were other more logical courses of action which counsel could

have pursued; rather, we must examine whether counsel's decisions had any reasonable basis." ***Commonwealth v. Chmiel***, 30 A.3d 1111, 1127 (Pa. 2011) (citation and quotation marks omitted). "We will conclude that counsel's chosen strategy lacked a reasonable basis only if [the petitioner] proves that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." ***Id.*** (citation and quotation marks omitted).

Additionally, "[c]ounsel are not constitutionally required to forward any and all possible objections at trial, and the decision of when to interrupt oftentimes is a function of overall defense strategy being brought to bear upon issues which arise unexpectedly at trial and require split-second decision-making by counsel." ***Commonwealth v. Koehler***, 36 A.3d 121, 146 (Pa. 2012) (citation omitted). "Under some circumstances, trial counsel may forego objecting to an objectionable remark or seeking a cautionary instruction on a particular point because objections sometimes highlight the issue for the jury, and curative instructions always do." ***Id.*** (citation, quotation marks, and brackets omitted).

In his first two arguments, which we address together, Appellant contends the parties were aware that Marable would remain silent if called to the witness stand. Appellant's Brief at 35. Despite Marable's stated intent, the Commonwealth called him as a witness. ***Id.*** Appellant cites multiple cases for the proposition that the Commonwealth should not call a witness if it knows in advance that the witness will remain silent. ***Id.*** at 36-50. Appellant asserts

that this practice prejudices the defendant, because the jury could draw an adverse inference against the defendant due to the witness's silence. *Id.* at 37, 40, 47.

Appellant insists that in this case, the Commonwealth violated these principles when it called Marable to the witness stand, and trial counsel should have objected to the Commonwealth's decision. *Id.* at 50, 54. Appellant maintains that trial counsel compounded this error by failing to request a cautionary instruction that the jury should not infer Appellant's guilt from Marable's refusal to testify. *Id.* at 53.

Appellant acknowledges that trial counsel provided a strategic reason for not objecting. Nevertheless, Appellant argues that trial counsel's explanation was constitutionally unreasonable, because an alternative "course of action offered a potential for success 'substantially greater' than placing Marable on the stand . . . ." *Id.* at 58. Specifically, Appellant claims that trial counsel could have called police witnesses to testify about the heights of the robbery suspects based upon their investigation reports. *Id.*

By way of background, we summarize trial counsel's testimony at the PCRA evidentiary hearing regarding these claims. Trial counsel indicated that the Commonwealth wanted to put Marable on the witness stand because he had provided a statement to police that inculpated himself and Appellant:

> It was [the Commonwealth's] belief that once Mr. Marable got up, whether he testified or not, whether he testified to whatever version of events, whatever he said, that at that point [the Commonwealth] could introduce the statement he gave on the

> ***Brady***/***Lively***[3] substantive evidence.   [The Commonwealth]
> wanted to get the statement into evidence.

N.T. PCRA Hr'g, 7/7/17, at 14-15.

In light of Marable's stated intention not to testify if called as a witness, trial counsel argued to the trial court that the Commonwealth could not put Marable's statement into evidence due to the lack of "an opportunity to cross-examine a man who hasn't said anything under oath."  ***Id.*** at 15.  The trial court ultimately agreed with trial counsel and did not permit the Commonwealth to enter the statement into evidence.

Despite these circumstances, the Commonwealth insisted on calling Marable as a witness.  Trial counsel did not object, explaining that he wanted the jury to look at Marable as part of a misidentification defense:

> [Appellant] was identified by at least one, if not two of the daughters of the main complaining witness.  [Vuthary Yun] did not . . . identify [Appellant], but he gave a description of the assailant who was in the home with the gun.
>
> One of the parts of the description was a height, a specific height. I wanted Mr. Marable to be able to come into the courtroom so that the jury could see . . . his particular height . . . and compare it to [Appellant].  I mentioned it on the record . . . .  I wanted them to see his physical stature.
>
> *     *     *
>
> It was an identification case.  It was a matter of . . . the evidence seemed to be pretty clear that there were three individuals inside the home.  Two were apprehended.

***Id.*** at 18-19.

---

[3] ***Commonwealth v. Brady***, 507 A.2d 66 (Pa. 1986); ***Commonwealth v. Lively***, 610 A.2d 7 (Pa. 1992).

With respect to his decision not to request a cautionary instruction, trial counsel testified:

> When I try cases, I generally take the position that I don't have a burden. If something doesn't hurt my client, why mention it? Why keep talking about it? Why keep highlighting it? Why would I highlight the fact that he didn't say anything? It didn't hurt [Appellant]. I will not call attention to it.

N.T. PCRA Hr'g at 33.

As noted above, the PCRA court determined that trial counsel had a reasonable basis for implementing this strategy, which was designed to effectuate Appellant's best interest. *See* PCRA Ct. Op. at 10.

Following our review of the record and Appellant's arguments, we discern no basis to disturb the PCRA court's determination. To the extent Appellant suggests that trial counsel should have followed the alternate strategy of admitting evidence of height through police witnesses, trial counsel explained that did not want to offer additional police witnesses where Marable's appearance in front of the jury served the same purpose. *See* N.T. PCRA Hr'g. at 43. On this record, we decline Appellant's invitation to second-guess trial counsel's strategy. *See Chmiel*, 30 A.3d at 1127; *see also Commonwealth v. Sneed*, 45 A.3d 1096, 1107 (Pa. 2012) (stating that ineffectiveness claims generally cannot succeed through comparing, in hindsight, the trial strategy actually employed with alternatives not pursued).

Similarly, as to trial counsel's failure to request an instruction cautioning the jury against drawing an adverse inference from Marable's silence, the PCRA court credited trial counsel's explanation that he did not want to

highlight Marable's conduct on the stand. In light of the relevant case law and applicable standard of review, we conclude that the PCRA court properly determined that trial counsel provided a reasonable basis for his inaction. *See* *Koehler*, 36 A.3d at 146; *Miller*, 102 A.3d at 992. Therefore, Appellant's first two claims warrant no relief.

In his third and fourth claims, Appellant asserts that a co-defendant's guilty plea "cannot be considered as evidence against the defendant because the defendant has a right to have his guilt or innocence determined by the evidence presented against him, not by what has happened with regard to a criminal prosecution against someone else." Appellant's Brief at 59 (citation, quotation marks, and brackets omitted). "Furthermore, if a co-defendant's guilty plea is introduced to the jury, it is incumbent upon trial counsel to request the trial judge to give adequate and clear cautionary instructions to the jury to avoid guilt by association as to the defendant being tried." *Id.* at 60 (citation and quotation marks omitted).

Regarding the parties' stipulation about Marable's guilty plea, Appellant insists the Commonwealth wanted this evidence in front of the jury to create an inference of "guilt by association." *Id.* Appellant argues that the stipulation created such an inference, which "destroyed trial counsel's misidentification defense by making it more likely than not [Appellant] was the basement gunman." *Id.* Appellant claims that trial counsel was ineffective for entering into the stipulation, trial counsel had no strategic

reason for failing to request a cautionary instruction, and trial counsel's decisions resulted in prejudice to Appellant. *Id.* at 61.

Instantly, trial counsel testified about his decision to enter into the stipulation regarding Marable's guilty plea as follows:

> The evidence was clear that there was a conspiracy, there was a robbery, a burglary. The evidence was also clear that there were two other people who were involved, one of which was Jerry Jean, because he was caught on scene and that came out in evidence. To me, . . . stipulating to the fact that Marable pled to those offenses did not inculpate [Appellant] because he was not his only co-defendant. The defense was that Jean and Marable were involved. The third guy, whoever he was, was not [Appellant].
>
> Had [Appellant] been the only alleged co-conspirator, that would have been a problem. We know there were at least two other people. To me, it didn't prejudice [Appellant] by my stipulating to that.

N.T. PCRA Hr'g. at 26-27. Trial counsel also declined to seek a cautionary instruction about guilt by association, because he did not believe that evidence of Marable's guilty plea inculpated Appellant. *Id.* at 35.

The PCRA court agreed that the stipulation "was in [Appellant's] best interest as it placed blame for this home invasion on other persons who were not tied to [Appellant] in any manner whatsoever." PCRA Ct. Op. at 10. Likewise, the court determined that trial counsel did not need to request a cautionary instruction where "nothing in the case tied Marable to [Appellant]." *Id.* The PCRA court's conclusions are sound. *See Koehler*, 36 A.3d at 146; *Chmiel*, 30 A.3d at 1127; *Miller*, 102 A.3d at 992.

In his fifth issue, Appellant complains that two police witnesses, Detectives Hopkins and Conn, provided testimony about Marable's post-arrest statement. Appellant's Brief at 62. Appellant argues that evidence of Marable's statement was irrelevant, because he refused to testify. *Id.* Appellant claims the Commonwealth's sole reason for presenting this testimony was to allow the jury to infer that Marable's statement must have incriminated Appellant. *Id.*

Appellant asserts that any competent counsel would have immediately objected to such testimony, because Appellant could not challenge it through a cross-examination of Marable. *Id.* Appellant insists that trial counsel was ineffective for failing to object, trial counsel did not have a strategic reason for his inaction, and trial counsel's failure resulted in prejudice to Appellant. *Id.* at 62-63.

Instantly, the detectives did not describe the contents of Marable's post-arrest statement, and the Commonwealth did not enter the statement into evidence. *See* N.T. PCRA Hr'g at 36. Nevertheless, PCRA counsel attempted to get trial counsel to admit that the jury might infer that Marable's statement implicated Appellant in light of the Commonwealth's attempt to have Marable testify. Trial counsel did not accept PCRA counsel's reasoning and reiterated, "As long as the substantive portion of the statement did not come into the record, . . . the jury is not going to say [Marable] must have said something about [Appellant]." *Id.* at 22.

As with trial counsel's decision to stipulate to Marable's guilty plea, the PCRA court agreed that the detectives' testimony advanced Appellant's theory that other individuals were responsible for the home invasion:

> [F]ailing to object to the testimony of the detective[s] who stated that Marable confessed was in [Appellant's] best interest. That testimony went to [Appellant's] claim of innocence. Someone with whom [Appellant] had no connection confessed. As the content of the confession was not admitted, [Appellant] was not implicated. Thus, there was no reason to object.

PCRA Ct. Op. at 10. We cannot say that the PCRA court erred in its analysis. *See Koehler*, 36 A.3d at 146; *Chmiel*, 30 A.3d at 1127; *Miller*, 102 A.3d at 992.

In his final claim, Appellant contends that the Commonwealth improperly referenced Marable's guilty plea and silence during the portion of its closing argument that we previously quoted. Appellant's Brief at 63. Appellant argues that when viewed in context, the Commonwealth's comments effectively implored the jury to find that Marable's guilty plea and silence proved Appellant's guilt. *Id.* at 64. Appellant maintains that the comments were impermissible, because he had the right to have his guilt or innocence determined by the evidence against him rather than what happened during the Commonwealth's prosecution of Marable. *Id.* at 63-64. Appellant insists that trial counsel was ineffective for failing to object to these remarks, trial counsel had no reasonable basis for his failure, and the failure resulted in prejudice to Appellant. *Id.* at 64.

"To establish the third, prejudice prong [of the test for ineffectiveness], the petitioner must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's ineffectiveness." *Chmiel*, 30 A.3d at 1127-28 (citation omitted).

> In making this determination, a court hearing an ineffectiveness claim must consider the **totality of the evidence** before the judge or jury . . . . Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Ultimately, a reviewing court must question the reliability of the proceedings and ask whether the result of the particular proceeding [was] unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.

*Commonwealth v. Crispell*, 193 A.3d 919, 932 (Pa. 2018) (citations and quotation marks omitted) (emphasis in original).

"In closing arguments, a prosecutor may comment on the evidence and any reasonable inferences arising from the evidence." *Commonwealth v. Charleston*, 94 A.3d 1012, 1024 (Pa. Super. 2014) (citation omitted).

> A prosecutor must have reasonable latitude in fairly presenting a case to the jury and must be free to present his or her arguments with logical force and vigor. The prosecutor is also permitted to respond to defense arguments. Finally, in order to evaluate whether the comments were improper, we do not look at the comments in a vacuum; rather we must look at them in the context in which they were made.

*Id.* (citation omitted).

Instantly, trial counsel conceded that he should have objected to the Commonwealth's closing argument:

> No strategic reason [for failing to object]. When I was informed of [Appellant's PCRA] petition and I went back and [the assistant

- 17 -

district attorney] showed me the transcript, I don't recall [the remarks at issue]. Obviously, it did [happen]. If you asked me today should I have objected, I would say, "Yes, I should have objected."

N.T. PCRA Hr'g at 29.

Despite trial counsel's testimony, the PCRA court concluded that there was no reasonable probability that the outcome of the proceedings would have been different but for counsel's failure to object. **See** PCRA Ct. Op. at 11. The PCRA court highlighted the evidence against Appellant, including: (1) Dina Khem's positive identifications of Appellant as the gunman immediately after the incident and at trial; (2) the victims' testimony that three men were involved in the home invasion, and police arrived to find two men inside the house and Appellant crouching behind a vehicle parked outside; and (3) Appellant's attempted flight in a vehicle containing a firearm and other items linked to Mr. Jean. **Id.**

Under the totality of this evidence, trial counsel's failure to object to the Commonwealth's closing argument did not create a reasonable probability that the outcome of the proceedings would have been different. **See Crispell**, 193 A.3d at 932; **Chmiel**, 30 A.3d at 1127-28. Therefore, the PCRA court properly dismissed the PCRA petition.[4] **Miller**, 102 A.3d at 992.

_____

[4] Appellant also suggests that he is entitled to relief based upon the theory that his claims cumulatively undermine confidence in the convictions. Appellant's Brief at 75. "[N]o number of failed ineffectiveness claims may collectively warrant relief if they fail to do so individually. When the failure of individual claims is based upon a lack of prejudice, however, then the cumulative prejudice from those individual claims may properly be assessed."

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn, Esq._
Prothonotary

Date: 4/23/19

---

**_Commonwealth v. Elliott_**, 80 A.3d 415, 450 (Pa. 2013) (citations omitted). Here, we have rejected Appellant's claims of ineffectiveness based solely on a lack of prejudice in connection with his final issue only. Thus, there can be no aggregation of prejudice from multiple ineffectiveness claims, and Appellant's claim of cumulative error fails.