Schweinberg, Admr., *v.* Irwin, Appellant.

Argued October 4, 1954. Before STERN, C. J., STEARNE, JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Carl W. Brueck,* for appellant.

*Robert Palkovitz* and *T. Robert Brennan,* with them *David S. Palkovitz, Jack Palkovitz* and *Brennan, Brennan, Damrau & Mohan,* for appellees.

OPINION BY MR. JUSTICE MUSMANNO, November 15, 1954:

March 31, 1951, was an ideal Spring day in Munhall, Pennsylvania. The skies were clear, the sun shone and children played on the streets. On McKinley Street, which runs east and west, a basketball game was being played with all the enthusiasm and freedom of a game unfolding in a gymnasium. Some 15 boys ran, leaped and pitched the ball at an improvised basketball hoop fastened to a telegraph pole. In the midst of their sport a Plymouth Sedan approached from the east. The boys halted the game, divided and moved to either side of the highway to let the motorist pass and then resumed their game.

The car continued along McKinley Street at a speed of from 10 to 15 miles per hour, proceeding westwardly toward Davis Avenue which intersects McKinley on a steep downgrade from the motorist's left. As the motorist, John Franklin Irwin, approached Davis Avenue he heard the noise of rapidly revolving wheels. The closer he got to Davis Avenue the faster the wheels seemed to spin and the louder noise they made.

Where Davis Avenue flows into McKinley it is bounded on its eastern side by a 3 feet-high wall surmounted by shrubbery. This landscaping screens

Davis Avenue to the extent that anyone approaching Davis on McKinley from the east cannot see what may be moving on Davis until he is about one-fourth of the way through the intersection.

In no way reducing his speed or increasing his caution the driver of the Plymouth Sedan struck into the crossing, looking first to the right and then to the left. As he passed the two-thirds distance mark in the intersection the noise of the revolving wagon wheels exploded into a crash. Irwin threw on his brakes and brought his car to a stop 20 feet beyond the southern line of McKinley Street. Twenty-five feet to the rear of his car two small boys lay face downward in the street. Splinters and blood bespattered the surface of the highway and a smashed scooter wagon was lodged beneath the Plymouth Sedan. The boys were taken to the hospital. One, William Schweinberg, age 6, died soon after; the other, Robert Kane, age 7, still suffers from crippling injuries received in the collision.

Lawsuits followed and at the combined ensuing trial the jury returned a verdict for the defendant. The learned Trial Judge, with the concurrence of the two other judges who sat with her in the court en banc, ordered a new trial. The defendant has appealed.

We see no reason to disturb the action of the lower court. The verdict, as the lower court stated, was clearly against the weight of the evidence. On his own testimony the defendant convicted himself of conduct which clearly spelled negligence. He knew that he was travelling through a neighborhood where children played outdoors; he had travelled over McKinley Street many times; he heard the admonitory rattle of a speeding wagon; he was familiar with the layout of the connecting thoroughfares and their geographical peculiarities; he was aware that the stone wall on Davis Avenue blindfolded his view as to what might

be entering into the very lane of traffic he was about to traverse. In spite of these signs he did not slacken speed, he did not even first look to the left from which direction it was more likely the children's wagon was coming since the street sloped downward from the left. In *Richardson v. Wilkes-Barre Transit Corporation*, 172 Pa. Superior Ct. 636, the Superior Court said: "It is the duty of a driver of a vehicle entering a two way street to look first to his left and then to his right. He must look to his right again as he nears the middle of the street: Zeigler v. Gullong, 168 Pa. Superior Ct. 637 [82 A. 2d 588]". We have pointed out a number of times that it is the duty of the driver of a vehicle approaching a two-way street to look first to his left and then to his right. That is because he first enters the lane in which traffic coming from his left is traveling. If he sees nothing approaching that would be likely to prove a source of danger to him, he may proceed, but as he nears the middle of the street it is his duty to look to his right again before entering into the traffic lane coming from that direction.

The defendant also violated the rule of the road regarding the care required in any area where one can expect children to be. In *Robb v. Miller*, 372 Pa. 505, 507, this Court said: "In driving through any locality where children are known to be in movement, motorists should drive with the care and caution of one walking through an infant's nursery. Every fully developed adult knows that children, especially those of tender age, are enthusiastic, impulsive and given to sudden, unanticipated movements. It is also obvious that they do not have the scope of physical vision which goes with an older person who, from his greatly increased height, has a vastly superior arc of view. A child of five cannot see much farther than a lamb and is equally helpless before the mechanical forces under the con-

trol of man. The failure on the part of a motorist to appraise these unvarying constants constitutes negligence when that failure results in a tragic accident, such as the one before us here."

The children in the instant case were aged 6 and 7 years. Speeding down a steep hill on a scooter wagon they did not have the physical scope of view open to the defendant and certainly they did not exercise mature reflection as to the dangers which might await them at the bottom of the hill. In *Frank v. Cohen,* 288 Pa. 221, 225, Justice KEPHART spoke not paternalistically but with an objective appreciation of realities, which cannot be ignored by any motorist, when he said: "Children are capricious, they act heedlessly without giving the slightest warning of their intentions. They dart here and there with the exuberance of youth. No law or court edict will stop them; we shall not attempt to do so, but rather warn those who may meet them to be on the lookout."

Every visual sign, every audible warning and every circumstance dictated to John Franklin Irwin on that afternoon of March 31, 1951, that he be on the lookout. He ignored what his eyes told him, and what his ears informed him; and he moved ahead on blind reckoning. The tragedy which followed was one which could have been foreseen.

The plaintiffs endeavored during the trial to introduce into evidence the transcript of the defendant's testimony given at the coroner's inquest. The Trial Judge rejected the offer. A defendant's previous statements are always admissible to establish admissions against interest or to show statements which contradict his present testimony or position. In *Stevenson v. Ebervale Coal Co.,* 201 Pa. 112, 122, this Court said: "The declarations of a party to the record, if against his interest, are always admissible, and, when the offer

is to prove what he testified to in certain proceedings at law, it is an offer to prove conclusively what his admission was. Ordinarily, admissions as matters of proof are uncertain and generally liable to be contradicted; but when uttered words are taken down as testimony in a cause, there can be no mistake as to what the witness said, or as to what the admissions were."

The order for a new trial is affirmed.