417 A.2d 1224

**Michael Lee LAMB, a minor, by Carl V. Lamb and Nancy J. Lamb, his Guardians; and Carl V. Lamb and Nancy J. Lamb, Individually**

v.

**Jeffrey L. GIBSON and T. H. Nelson.**

**Appeal of Jeffrey L. GIBSON.**

Superior Court of Pennsylvania.

Submitted Oct. 25, 1978.

Filed Jan. 4, 1980.

8

James B. Yelovich, Somerset, for appellant.

Eugene E. Fike, II, Somerset, for appellees.

Before VAN der VOORT, SPAETH and MONTGOMERY, JJ.

VAN der VOORT, Judge:

This is an action in trespass which arose as a result of a truck-pedestrian accident that occurred on September 5, 1974 on Legislative Route 601, Boswell Borough, Somerset County, Pennsylvania. The defendant-appellant, Jeffrey L. Gibson, was the operator of a pick-up truck owned by

defendant, T. H. Nelson, which struck and injured four-year-old Michael Lee Lamb who was crossing the road, resulting in serious injuries and substantial medical expense. Trespass actions were brought by his parents on behalf of the minor boy and themselves against Jeffrey L. Gibson and T. H. Nelson. Subsequently, upon stipulation of the parties, the Court granted Nelson's Motion for Summary Judgment on August 4, 1977.

The case was tried before a jury in the Court of Common Pleas of Somerset County on September 12, 13, 14 and 15, 1977, Judge Norman A. Shaulis presiding. The jury returned a verdict in favor of the defendant-appellant, Jeffrey L. Gibson, in these words: "We find the defendant, Jeffrey Gibson, not guilty to the charge of negligence." The appellees moved for judgment n. o. v. or a new trial. The trial judge, with the concurrence of President Judge Coffroth, filed an Opinion and entered an Order dated November 29, 1977, denying the motion for judgment n. o. v., but granting the motion for a new trial. The defendant-appellant, Gibson, has appealed from the Order granting a new trial.

The accident out of which this litigation arose occurred on September 5, 1974 at about 3:30 p.m. The weather was clear and visibility was normal. The appellant was operating a 1973 model Ford pick-up truck in a northerly direction on Route 601 in Boswell Borough, Somerset County. Route 601 is a two lane highway extending generally in a northerly-southerly direction at the location involved in the accident. Route 601 curves to the right shortly before the Boswell Borough limits, approximately one and one-half to two miles north of its intersection with Route 30. As a driver going in a northerly direction rounds this curve, he enters a slight dip in the grade of the road, which is followed by a slight gradual upgrade to the crest of the grade some three hundred fifty feet distant. At the crest of the grade, Route 601 intersects with Atlantic Avenue. A 35 m. p. h. speed limit sign is posted on the northeasterly corner of the intersection (i. e., on the right hand side of the road to a driver going north). At this intersection, Route 601 begins

to slope downward as it continues northward to the next intersection of Route 601 and Mexico Street, and gradually levels off northward as it proceeds into Boswell Borough proper. The highway is of asphalt composition, has two lanes, is twenty-four feet wide and is straight.

There is no dispute as to the circumstances of the accident. The appellant, then nineteen years of age, was traveling north on that portion of Route 601 previously described. As he rounded the curve at the foot of the grade, he saw two small boys some 350 feet ahead of him at or near the crest of the slope. They appeared to be running across the road from its right-hand or the easterly side to the left-hand or westerly side. Appellant testified that he was traveling about 35 m. p. h. from the time he first saw the boys until he hit Michael and that he did not pay any attention to the boys after they crossed the first time. He continued toward the crest of the grade where he had seen the boys, but testified that he did not see them again until he came over the crest of the grade and then saw the boys running back across the highway from west to east, approximately 45 to 50 feet in front of his truck. He applied his brakes but could not stop before hitting Michael Lamb. The boy was almost directly in front of the truck in the northbound lane when appellant saw him. It was not a "dart out" case, for the boys were already in the middle of the road when appellant saw them as he approached the crest. Appellant testified that Michael seemed to "freeze" in front of the truck, while the other boy kept running and escaped injury. He testified that the boys were 45 to 50 feet in front of him when he first saw them as he reached the crest of the grade, and that his truck traveled about an additional 35 feet after striking Michael before stopping. Appellant's vehicle struck the boy and passed over his body, although the wheels of the truck did not touch him. The vehicle left skid marks in the northbound lane of varying degrees of darkness extending from 72 to 90 feet in length.

The testimony indicates that Michael has suffered permanent brain damage. He has not been able to remember or

speak coherently about what happened. He was hospitalized for two and one-half months and subsequently treated at the Pittsburgh Home for Crippled Children on both an inpatient and outpatient basis for approximately one and one-half years. His medical expense had amounted to approximately $60,000 at the time of trial.

There were eight witnesses to the accident: the two boys, the appellant and a companion who was riding with him, and two couples who were approaching the crest of the hill in two vehicles southbound at the time of the accident. The four passengers in the southbound cars were at least 200 feet to the north of the site of the accident and at a slightly lower grade.

The only significant disparity in the testimony is between the evidence of appellant and his companion in the truck, Gerald Benedict, as to the continued visibility of the boys in the highway. Appellant testified that after he first saw the boys in the road some 350 feet ahead of him, he then lost sight of them as his truck entered the dip in the road and started up-grade and did not see them again until he approached the crest of the grade. His passenger, Gerald Benedict, testified that he not only saw the children initially, but that they remained within sight as the appellant's truck ascended the grade and that he saw the boys crossing the highway a total of four times. He testified that he warned appellant that children were still on the highway ahead of them but this was either unheard or unheeded by appellant.

In submitting the issue of appellant's negligence to the jury, the trial judge explained three standards by which appellant's conduct should be weighed: (1) Appellant must have been traveling within the posted speed limit of 35 m. p. h.; (2) he must have been traveling at a speed no greater than one which would permit him to bring his vehicle to a stop within the assured clear distance ahead, i. e., within the distance he could clearly see; and (3) if appellant had reason to apprehend that children were on or near the highway ahead of him, he was under a duty to have his vehicle under such control that it could be stopped on the shortest possible

notice that harm might be inflicted. See *Unangst v. White-house*, 235 Pa.Super. 458, 463–468, 344 A.2d 695, 698–700 (1975), for a full explanation of the assured clear distance rule, and *Schweinberg v. Irwin*, 379 Pa. 360, 363–364, 109 A.2d 181, 183 (1954) for an elaboration of the care required when children are known to be in the vicinity.

The jury returned a verdict in favor of the appellant in this wording: "we find the defendant, Jeffrey Gibson, not guilty to the charge of negligence", which the court molded into a verdict for the appellant. However, the trial judge and President Judge Coffroth, sitting as a court en banc, granted a new trial and supported that ruling with an Opinion which reviewed the evidence and concluded with the following summary:

> While we recognize the weight and credibility of witnesses must rest with the jury, and while we may not speculate as to how the jury reached its verdict, this writer as trial judge did not find defendant's evidence to conflict with that presented by plaintiffs on the material issue. We can only conclude that the jury was misled by the testimony that defendant did not exceed the posted speed limit rather than applying the standards of care expressed above. Compare, *Haeberle vs. Peterson*, 25 Chester 152 (1977).

> It is our duty to grant a new trial when the verdict is against the clear weight of the evidence. We believe the verdict is so opposed to the facts and law that it shocks the judicial conscience to permit this verdict to stand.

 While a trial judge does not sit as a thirteenth juror entitled to substitute his judgment for that of the jury, it is his duty to review the entire record and if he concludes that the verdict is against the clear weight of the evidence or that the judicial process has effected a serious injustice, he should grant a new trial. We will only reverse such a ruling if we conclude that he acted capriciously or clearly abused the discretion vested in him. *Austin v. Ridge*, 435 Pa. 1, 4–5, 255 A.2d 123, 124–125 (1969); *Bellettiere v. Philadelphia*, 367 Pa. 638, 641–644, 81 A.2d 857, 858–859 (1951); *Lockhart v.*

*Longmore,* 189 Pa.Super. 455, 459, 151 A.2d 829, 830–831 (1959).

We find no basis in this case for holding that the lower court abused its discretion in granting a new trial.

Affirmed.