J-A08025-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AQUIL JOHNSON | : | |
| | : | |
| Appellant | : | No. 1556 EDA 2019 |

Appeal from the PCRA Order Entered May 20, 2019,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s): CP-51-CR-0005617-2009.

BEFORE: LAZARUS, J., KUNSELMAN, J., and McCAFFERY, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED MAY 01, 2020**

Aquil Johnson appeals *pro se* from the order that denied his first petition filed pursuant to the Post Conviction Relief Act (PCRA). 42 Pa.C.S.A. §§ 9541-46. We affirm.

This case returns to us following a remand for an evidentiary hearing. We previously summarized the pertinent facts as follows:

> [Johnson] was charged with aggravated assault and possession of an instrument of crime in connection with the May 13, 2008 shooting of Kamal Murray ("the victim"). On the day in question, the victim was sitting in passenger seat of his friend Bryon Walker's car, when an individual walked up to the vehicle and shot the victim three times. Shortly after Walker rushed the victim to the emergency room, doctors were able to stabilize the victim, who had bullet wounds in his arms and minor wound to his chest. The victim was given a low dose of morphine to ease the pain.
>
> Once the victim's condition was stabilized, he spoke with Officer Earl Bonner an [another officer] and gave them a

detailed description of the shooter. Based on this information, [they] prepared an incident report describing the perpetrator as an "eighteen-year-old black male, 5/11, 190 pounds, medium build, white thermal, blues jeans, possibly named Quil" as well as noting that the perpetrator had protruding front teeth.

Shortly thereafter, Detective Joseph Murray and Detective Omar Jenkins, went to the hospital to present the victim with a photo array, from which the victim identified [Johnson] as the shooter. The victim indicated that "Quil" shot him after the two men had a fight regarding Quil's disrespect of the victim's girlfriend. The victim admitted that he knew [Johnson] "all his life." Once the victim's interview was reduced to a written statement, the victim adopted the statement by writing his initials at the bottom of each page.

However, at [Johnson's] trial, the victim recanted his identification of [Johnson] and denied making any statement to police naming [Johnson] as the shooter. Defense counsel presented four witnesses: alibi witness Talia McNeil, character witnesses Mckieya Cook and Lorena Ebo, and [Johnson] himself. [Johnson] vehemently denied shooting the victim, but admitted that his nickname was "Quil" and that he has protruding front teeth.

*Commonwealth v. Johnson*, 174 A.3d 112 (Pa. Super. 2017), unpublished memorandum at 1-3 (citations to record and footnote omitted).

At the conclusion of his trial, the jury convicted Johnson of aggravated assault and possession of an instrument of crime. On September 17, 2010, the trial court sentenced him to an aggregate term of 12½ to 25 years of imprisonment. On July 27, 2012, this Court affirmed Johnson's judgment of sentence. *Commonwealth v. Johnson*, 55 A.2d 148 (Pa. Super. 2012) (unpublished memorandum).

We have previously summarized Johnson's pursuit of post-conviction relief as follows:

> On May 13, 2013, [Johnson] filed a *pro se* PCRA petition. The PCRA court appointed [PCRA counsel], who subsequently filed a no-merit letter and a petition to withdraw. On July 24, 2015, [Johnson] filed an amended *pro se* petition, raising claims of PCRA counsel's ineffectiveness for *inter alia*, failing to investigate the issues [Johnson] desired to appeal. On November 19, 2015, [Johnson] filed a letter to the PCRA court, pointing out that counsel failed to address several issues he wished to raise on collateral review.
>
> On January 31, 2016, [PCRA counsel] filed a supplemental amended petition, claiming several of [Johnson's] claims had arguable merit. On February 5, 2016, the PCRA court notified [Johnson] of its intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907. On February 23, 2016, [Johnson] filed a *pro se* response. On March 4, 2016, the PCRA court dismissed [Johnson's] petition.
>
> On March 10, 2016, [Johnson] filed a notice of appeal. This Court remanded the case for a **Grazier** hearing to determine if [Johnson] was intelligently, knowingly, and voluntarily waiving his right to counsel on collateral appeal. On May 3, 2016, the PCRA court entered an order permitting [Johnson] to proceed with *pro se* representation.

**Johnson**, **supra**, unpublished memorandum at 3-4.

Although Johnson raised ten issues on appeal, only the following two issues are pertinent to the present appeal: First, Johnson claimed that the PCRA court erred in failing to grant him an evidentiary hearing regarding his claim trial counsel was ineffective for failing to call Byron Walker, and Kieyanna Joyner, an alibi witness. As to both of these witnesses, Johnson claimed alternatively, that trial counsel was ineffective for not requesting a

brief adjournment of the proceedings so that counsel could secure their presence. Second, Johnson claimed that the PCRA court erred in failing to hold an evidentiary hearing regarding his claim of newly discovered evidence from Orrin Jones, who submitted a notarized affidavit in which he averred that he was an eyewitness to the crime and that Johnson was not the person he saw shoot the victim.

As noted above, the PCRA court found no merit to these claims and dismissed Johnson's PCRA petition without a hearing. This Court found the record did not support the PCRA court's conclusions as to either claim. As to the first issue regarding the failure to call Walker and Joyner, we determined that, after reviewing the record, Johnson had "carried his burden of showing a sufficient factual issue to warrant a hearing." ***Johnson***, ***supra***, unpublished memorandum at 16. As to the second issue, this Court found that Johnson "alleged sufficient facts to warrant an evidentiary hearing to evaluate his claim further." ***Id.*** at 17. We stated, "If found to be credible, Mr. Jones's testimony that someone other than [Johnson] was the shooter would certainly have changed the outcome of the case." ***Id.*** (citation omitted).

Thus, in ***Johnson***, ***supra***, this Court concluded that the PCRA court erred in dismissing Johnson's amended PCRA petition without a hearing. We therefore vacated the PCRA court's order and remanded for an evidentiary hearing on these two claims. ***Id.*** at 30.

On February 2, 2019, the PCRA court held an evidentiary hearing at which Orrin Jones, Kieyanna Joyner, and trial counsel testified. Byron Walker

failed to appear even though he had been subpoenaed. On March 28, 2019, the court held another hearing to give Walker another opportunity to appear. Although arriving late, Walker appeared and testified. On May 20, 2019, the PCRA court dismissed Johnson's PCRA petition. In doing so, the PCRA court specifically stated that it found Jones, Walker and Joyner were not credible. The court further found that Walker and Joyner were unavailable to testify at Johnson's jury trial, and that their testimony would have been cumulative.

Following this dismissal, the PCRA court held another *Grazier* hearing, and, thereafter, permitted Johnson to proceed *pro se* on appeal. This timely appeal followed. Both Johnson and the PCRA court have complied with Pa.R.A.P. 1925.

Johnson now raises the following eight issues, which we have reproduced verbatim, but renumbered for ease of disposition:

    I.    Did the PCRA court commit an error of law and fact in violation of [Johnson's] U.S. and Pa. Constitutional Rights by ruling that defense witness Orrin Jones was not credible simply because he had a conviction for robbery where, that conviction did not involve giving false testimony or an act of deception? And, Where, nothing in his testimony was inconsistent or contradictory will all the other witnesses or evidence and would have probably produced an acquittal at a re-trial?

    II.    Did the PCRA court commit an error of law and fact and make an unreasonable determination in violation of [Johnson's] U.S. and Pa. Constitutional Rights when it ruled that witness Byron Walker was not available and that his testimony was cumulative?

    III.    Did the PCRA court commit an error of law and fact and make an unreasonable determination in violation

of [Johnson's] U.S. and Pa. Constitutional Rights when it ruled that Kieyanna Joyner was not available and that her testimony was cumulative?

IV. Did the PCRA court commit an error of law in violation of [Johnson's] U.S. and Pa. Constitutional Rights by reviewing the credibility of the witness Walker, for his [**Strickland v. Washington**, 466 U.S. 668 (1984)] claim, under a "more likely than not" standard applicable to newly discovered evidence claims, instead of using a reasonable probability standard as directed by the PA. Supreme Court in [**Commonwealth v. Johnson**, 966 A.2d 523 (Pa. 2009], and the U.S. Supreme Court in [**Strickland**] where, the "more likely" standard raised [Johnson's] burden when establishing prejudice dealing with the witness's credibility? And, does using the wrong standard deprive the [PCRA] court of deference?

V. Did the PCRA court commit an error of law and fact and make an unreasonable determination in violation of [Johnson's] U.S. and Pa. Constitutional Rights when it ruled that witness Byron Walker was not credible without considering how this witness's testimony would have affected [Johnson's] decision to testify, the impact of his testimony in light of the lack of inculpatory evidence and the time lapse between trial and the PCRA evidentiary hearing?

VI. Did the PCRA court commit an error of law and fact and make an unreasonable determination in violation of [Johnson's] U.S. and Pa. Constitutional Rights when it ruled that witness Kieyanna Joyner was incredible simply because [the court] believed her testimony did not have the ring of truth where the Supreme Court's rule regarding alibi witnesses is that their testimony need not be "wholly believed" to "raise a reasonable doubt"?

VII. Did the PCRA court commit an error of law and fact and make an unreasonable determination in violation of [Johnson's] U.S. and Pa. Constitutional Rights when it failed to address the cumulative prejudicial effect of [trial] counsel's failures and failed to consider the specific question that was certified to it by this [C]ourt

on remand where, the court never answered the question of whether trial counsel was ineffective for failing to request a brief adjournment to obtain the witnesses Joyner and Walker['s] attendance?

VIII. Would remanding back to the PCRA court instead of awarding a new trial cause a manifest injustice in violation of [Johnson's] U.S. and Pa. Constitutional Rights where the totality of the evidence and circumstances clearly established [Johnson] is entitled to a new trial?

Johnson's Brief at 5-6.

Our scope and standard of review is well settled:

In PCRA appeals, our scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party. Because most PCRA appeals involve questions of fact and law, we employ a mixed standard of review. We defer to the PCRA court's factual findings and credibility determinations supported by the record. In contrast, we review the PCRA court's legal conclusions *de novo*.

***Commonwealth v. Reyes-Rodriguez***, 111 A.3d 775, 779 (Pa. Super. 2015) (citations omitted). On appeal, the PCRA court's credibility determinations, if supported by the record, are binding on this Court. ***Commonwealth v. Medina***, 92 A.3d 1210, 1214 (Pa. Super. 2014). ***See also See Commonwealth v. Martin***, 1 A.3d 868, 888 (Pa. 2010) (stating that the factual findings of a PCRA court, "which hears evidence and passes on credibility of witnesses, should be given great deference," especially where "the PCRA court judge also served as the trial court judge").

In his first issue, Johnson essentially challenges the PCRA court's assessment of Jones' credibility. To address this claim, we first note the test applied to after-discovered evidence. When discussing the test in the context of a PCRA appeal, our Supreme Court recently summarized:

> [W]e have viewed this analysis in criminal cases as comprising four distinct requirements, each of which, if unproven by the petitioner, is fatal to the request for a new trial. As stated, the four-part test requires the petitioner to demonstrate the new evidence: (1) could not have been obtained prior to the conclusion of trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted. The test applies with full force to claims arising under Section 9543(a)(2)(vi) of the PCRA. In addition, we have held the proposed new evidence must be producible and admissible.

*Commonwealth v. Small*, 189 A.3d 961, 972 (Pa. 2018) (citations omitted).

Credibility determinations are an integral part of determining whether a PCRA petitioner has presented after-discovered evidence that would entitle him to a new trial. *See*, *e.g.*, *Small*, 189 A.3d at 978-79 (remanding for the PCRA court to make relevant credibility determinations). We have stated, prior to granting a new trial based on after-discovered evidence, "a court must assess whether the alleged after-discovered evidence is of such a nature and character that it would likely compel a different verdict if a new trial is granted. *Commonwealth v. Padillas*, 997 A.2d 356, 365 (Pa. Super. 2010). "In making this determination, a court should consider the integrity of the alleged

after-discovered evidence, the motive of those offering the evidence, and the overall strength of the evidence supporting the conviction." ***Id.***

Here, the PCRA court summarized Jones' testimony from the evidentiary hearing and explained why the court found it to be unworthy of belief:

> Orrin Jones testified that on May 13, 2008, he witnessed the shooting of [the victim], a man known to him from the neighborhood, but that he never came forward to be interviewed by police in their investigation. He also stated that he knew the shooter, a man known as Reds or Redbone, whose real first name is also Aquil. When asked by defense counsel if [Johnson] was the shooter he answered in the negative.
>
> Jones further testified that sometime in 2014, while housed in the same prison as [Johnson], another inmate, Hakeem, pointed at [Johnson] and stated "that's the young bull who got booked for [the victim]," meaning Johnson had been convicted in that shooting. Interesting enough, Jones did not provide any context as to why, of all the men in the facility, Hakeem drew his attention to [Johnson]. At any rate, Jones testified that in response he told his friend that he was a witness to this six year old shooting. Although he never went to police to assist in getting justice for [the victim], he volunteered, after speaking with Johnson, to sign an affidavit which exculpates [Johnson], a man who was a stranger to him.
>
> The above alleged factual scenario, that is[,] a prisoner encounter with someone unjustly serving time for a crime that the affiant witnessed years before, coming from a credible witness may well carry the day. However, Jones, a man with multiple [*crimen falsi*] convictions for robbery, was not a credible witness. Thus, this court finds that his testimony is ***not*** of such nature and character that a different will likely result if a new trial is granted.

PCRA Court Opinion, 5/20/19, at 1-2. Our review of Jones' testimony at the evidentiary hearing supports the PCRA court's conclusion.

In arguing to the contrary, Johnson asserts that the PCRA court "committed error by disregarding Jones's testimony simply because he has a conviction for robbery and, the PCRA court's determination of a lack of credibility is not supported by the record where nothing in Jones's testimony was inconsistent or contradictory with all the other witnesses or evidence and would have probably compell[ed] an acquittal at a re-trial." Johnson's Brief at 12. In addition, Johnson claims "Jones's conviction, although classified as a [*crimen falsi*] offense, is in actuality not a [*crimen falsi*] offense at all because robbery does not involve deceit." *Id.* at 22.

Johnson's claims are meritless. Initially, we note that Jones admitted that he was convicted of three to four robberies, rather than one as Johnson suggests. *See* N.T., 2/22/19, at 18. Moreover, the crime of robbery is a *crimen falsi* offense, which is admissible to impeach a witness' credibility. *See*, *Commonwealth v. Jackson*, 585 A.2d 1001 (Pa. 1991); *Commonwealth v. Harris*, 884 A.2d 920 (Pa. Super. 2005). Johnson cites no authority for his assertion that robbery does not involve deceit. Indeed, when discussing the crime of robbery, this Court has characterized it as "a crime involving serious moral turpitude" and "indicates [a] propensity for dishonesty on [a] defendant's part." *Commonwealth v. Jones*, 378 A.2d 471, 476 (Pa. Super. 1977). At the evidentiary hearing Jones conceded that, in the past, he has lied when he was in trouble, and gave false names to the police. *See* N.T., 2/22/19, at 19-21. The PCRA court properly considered Jones' prior robbery convictions when assessing his credibility. Thus, the

PCRA court did not err in concluding that Jones's proffered testimony was not of such a nature and character that it would compel a different result. ***Padillas***, ***supra***. Johnson's first issue fails.

In issues two through six, Johnson raises claims regarding the PCRA court's determination regarding trial counsel's failure to call Walker and Joyner at his trial. Our standard or review is well settled:

> To be entitled to relief on a claim of ineffectiveness for failure to call a witness, an appellant must demonstrate: the witness existed, was available, and willing to cooperate; counsel knew, or should have known of the witness; and the absence of the witness's testimony prejudiced [the] appellant. A PCRA petitioner cannot succeed on such a clam if the proposed witness' testimony would not have materially aided him. In such a case, the underlying-merit and prejudice prongs of the [ineffective assistance of counsel] test logically overlap. To show prejudice, the [PCRA] petitioner demonstrate that, but for counsel's allegedly unprofessional conduct, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

***Commonwealth v. Johnson***, 139 A.3d 1257, 1284 (Pa. 2016) (citations omitted).

In his second and third issues, Johnson asserts that the PCRA court erred by concluding that both Walker and Joyner were unavailable for his jury trial.[1] The PCRA court expressly made this ruling after hearing their

_____

[1] Although as part of these issues Johnson also challenges the PCRA determination that proffered testimony of Walker and Joyner was cumulative,

testimony, which the court disbelieved, in comparison to trial counsel's testimony. **See** N.T., 2/22/19, at 11 (determining that both witnesses made themselves unavailable for trial). In its Rule 1925(a) opinion, the PCRA court further explained its ruling: "First, both Walker and Joyner made themselves unavailable when their testimony was required. Walker because he simply left the courtroom and never returned. Joyner because she was scheduled to work the following day." PCRA Court Opinion, 5/20/19, at 5.

At the February 22, 2019, evidentiary hearing trial counsel testified that both witnesses were subpoenaed to appear at Johnson's trial and, therefore were required to appear until they were dismissed. N.T., 2/22/19, at 84. As a matter of credibility, the PCRA court believed trial counsel's version of the contested facts. We cannot disturb this determination. **See Commonwealth v. Harmon**, 738 A.2d 1023, 1025 (Pa. Super. 1999) (explaining that when a PCRA court's determination of credibility is supported by the record, it cannot be disturbed on appeal).

Given the PCRA court's conclusion regarding the credibility and availability of Walker and Joyner, Johnson's claim that trial counsel was ineffective for failing to request a short recess to secure their presence has no merit. Thus, Johnson's second and third issues entitle him to no relief.

_____

we will address these claims as part of our discussion of the PCRA court's conclusions regarding their credibility. **See infra**.

In issues four and five, Johnson essentially challenges the PCRA court's assessment of Walker's credibility. We first note the PCRA court's summary of Walker's testimony at the March 28, 2019 hearing, in comparison to the contents of his 2012 affidavit:

Walker testified at the evidentiary hearing in this case on March 28, 2019, having failed to appear, despite good service at the February 22, 2019 hearing, wherein both Joyner and Jones testified. Walker had been subpoenaed to appear as a trial witness in this case. He appeared, but left before the defense case commenced and failed to return to court to testify. Despite being an eyewitness to the shooting of his friend, Walker never gave a statement to police in this case, and as stated above, he never returned to court to testify at the trial. At the evidentiary hearing, Walker stated that he was excused as a trial witness by the prosecutor in the case. However, in his affidavit, he stated that it was the defense attorney, [trial counsel], who excused him to testify. In that same affidavit he described the shooter as a tall light skinned guy with braids who was staring at him as he left the Chinese store. He further stated in the affidavit that the man then pulled out a gun and started firing in his direction as he was getting into his car. Nowhere in the affidavit does he mention the whereabouts of [the victim] during the shooting. Nor does he mention, as [the victim] did in his statement, that there was a verbal exchange between the victim and the shooter before the shots were fired. In addition, during his testimony, Walker denied that he ever signed the affidavit. In describing the shooter at the hearing [Walker] never mentioned braids but stated the man was wearing a baseball cap. Further, contrary to his statement in the affidavit, Walker testified that he never spoke to [trial counsel] on the day he appeared at Johnson's trial. He also stated, during his testimony, that he did not know on whose behalf he would be called as a witness. Walker also stated that [the victim] was shot while standing outside the car, whereas in his statement to police, [the victim] said he was seated inside the car when shot by Johnson.

- 13 -

Further, Walker stated at the hearing that he simply dropped [the victim] off at the hospital and left without speaking to police, making no effort to assist in bringing his friend's assailant to justice. He also stated at the hearing that he had known Johnson since [Johnson] was 5 or 6 years old, yet he failed to follow up as a witness who could have, arguably, exonerated [Johnson] at trial. Not only did Walker fail to follow up by returning to court as a witness at trial, he failed to appear at the evidentiary hearing on February 22, 2019. It was only after a bench warrant was issued for his arrest, and a weekend in jail, that he appeared at the hearing on March 28, 2019. Then he appeared late.

PCRA Court Opinion, 5/20/19, at 3-4.

Based on these findings, the PCRA court then reached the following conclusion:

As the foregoing makes abundantly clear, [Walker] was not credible witness. Thus, his testimony is not of such nature and character that a different verdict would likely result if a new trial was granted.

*Id.*, at 4.

In his fourth issue, Johnson asserts that the PCRA court applied the wrong standard to judge Walker's credibility. According to Johnson, the test used by the PCRA court was incorrect as the court should have applied the "reasonable probability" standard required by *Strickland*'s general test of prejudice in reviewing ineffectiveness of counsel claims. According to Johnson, the PCRA court "incorrectly applied the prejudice standard applicable to newly discovered evidence claims," a standard Johnson claims is "too high" when considering his ineffectiveness of counsel claims. Johnson's Brief at 15. We cannot agree.

- 14 -

In making his argument, Johnson misinterprets our Supreme Court's decision in **Commonwealth v. Johnson**, 966 A.2d 523 (Pa. 2009). In that case, the appellant, who was convicted of first-degree murder and was sentenced to death, filed a PCRA petition in which he raised several claims of trial counsel's ineffectiveness for failing to interview witnesses to the crime, as well as a claim of after-discovered evidence based on a witness's recantation of his trial testimony. The PCRA court held an evidentiary hearing. The new witnesses proffered testimony consistent with the trial witness's recantation. The PCRA court found the appellant proved prejudice based on trial counsel's ineffectiveness, and for that reason, granted him a new trial. Although the PCRA court expressly discredited the trial witness's recantation testimony, the court concluded that it did not need to determine the new witnesses' credibility, because that role was for the jury once the appellant's new trial was held.

The Commonwealth appealed to our Supreme Court and raised numerous claims, including PCRA court error in failing to assess the credibility of the new witnesses proffered by Johnson. According to the Commonwealth, in order to grant a new trial based upon trial counsel's ineffectiveness, "the PCRA court must necessarily find that if the evidence presented at the PCRA hearing had been presented at trial, it would have been found to be credible by the jury and would have resulted in [Johnson's] acquittal." **Johnson**, 966 A.2d at 541 (citation omitted).

In a unanimous decision, our Supreme Court found that "[s]uch a high burden, it seems to us, does not comport" with the **Strickland**[2] prejudice standard for proving ineffectiveness. **Johnson**, 966 A.2d at 541. Rather, the high court stated "[a]fter-discovered evidence cases premised upon recantation testimony are instructive in explicating the credibility assessment." **Id.** Our Supreme cited the **Small** test cited above, and noted that the Court "has remanded after-discovered evidence cases and specifically directed the trial or PCRA court to make credibility determinations on the recantation testimony with an eye to the relevant prejudice standard." **Id.**

The **Johnson** court then discussed several of these cases, and concluded, "the after-discovered evidence cases tie the court's credibility determination to the governing prejudice standard." **Id.** at 542. The high court thus vacated the order granting the appellant a new trial and remanded the case so that the PCRA court could properly assess the new witness's credibility.[3] In doing so, our Supreme Court explained:

> In assessing credibility on remand in the case *sub judice*, the question for the PCRA court is not whether the jury in fact would have credited [Johnson's] new evidence[.] Instead, the question is whether the nature and the quality of the evidence is such that the jury would have credited it and rendered a more favorable verdict. That assessment must include a recognition of the impeachability of the

---

[2] **Strickland v. Washington**, 466 U.S. 668 (1984).

[3] The PCRA court also concluded that Johnson received ineffective assistance during the penalty phase of his case. Given its remand, our Supreme Court declined to reach that issue. **Johnson**, 966 A.2d at 543.

> witnesses, and not merely a viewing of their testimony in a most favorable light. **Some witnesses may display a demeanor**, or be subject to such strong impeachment [] that the court is convinced that no reasonable jury would believe them. On the other hand, some witnesses may conduct themselves, or be of such repute, that the PCRA judge would credit them.

**Johnson**, 966 A.2d at 542 (emphasis added).

Summarizing **Johnson**, our Supreme Court concluded that the **Strickland** prejudice standard for claims of ineffectiveness of counsel aligned with the prejudice standard in the fourth prong of the test for after-discovered evidence, *i.e.*, that the new witnesses' testimony would "would likely result in a different verdict if a new trial were granted." **Small**, **supra**. Therefore, in each situation the PCRA court must considered the credibility of the new evidence proffered when determining if the petitioner established the requisite prejudice before granting post-conviction relief.

Here, contrary to Johnson's assertion that the PCRA court applied the wrong standard, the prejudice test applied to both after-discovered evidence claims and ineffectiveness claims is the same. Moreover, when announcing its findings of fact and conclusions of law in open court, the PCRA court cited the correct standard in determining that Johnson did not establish the requisite **Strickland** standard of prejudice with regard to Johnson's ineffectiveness claim involving Walker. **See** N.T., 5/20/19, at 11. In its Rule 1925(a) opinion the PCRA court reiterated the proper standard when assessing the testimony of both Walker and Joyner:

In addition, to show prejudice [Johnson] must demonstrate that there is a reasonable probability that, but for counsel's allegedly unprofessional conduct, the result of the trial would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. It is clear that the evidence . . . Walker would have presented to the jury, if called, was cumulative of the testimony already in the record. . . . [Johnson] himself testified that he was not the shooter. Hence, there is no prejudice to Johnson by virtue of the fact that . . . Walker [was not] called as [a witness]. Consequently, even if Johnson could satisfy the other elements of the failure to call a witness test, he cannot demonstrate, on this record, that the outcome of the trial would have been different had [Walker] testified before the jury.

PCRA Court's Opinion, 5/20/19, at 5.

We cannot disturb this determination as it is supported by our review of Walker's testimony. *Medina*, *supra*. Thus, Johnson's fourth issue is without merit.

In his fifth issue, Johnson challenges the "PCRA court's determination [that Walker's] testimony, an undisputed eyewitness to the crime, was not credible, was unreasonable" because the PCRA court "failed to consider how [Walker's] testimony would have affected [Johnson's] decision to testify, the impact of his testimony in light of the lack of inculpatory evidence and the time lapse between the incident, trial and the PCRA evidentiary hearing." Johnson's Brief at 12-13. In support of this issue, Johnson complains about the PCRA court's delay in resolving his post-conviction claim and that Walker "did not get a chance to give his testimony until over a decade after the crime

and seven years after he made his affidavit." Johnson's Brief at 29. Johnson asserts that this delay constitutes a "manifest injustice." *Id.* at 30.

Finally, Johnson claims that the PCRA court failed to consider the "totality of the circumstances." *Id.* According to Johnson:

> The PCRA court completely failed in this regard. The court simply claimed that the evidence was cumulative because [Johnson] testified that he wasn't the shooter. There was no discussion of the lack of evidence of guilt or how if [Walker] was called, [Johnson] would not have taken the stand.
>
> There was no discussion of how this evidence would have impacted the jury's consideration in light of the overwhelming evidence of innocence. Surely, five people including the victim testified that [Johnson] was innocent.

Johnson's Brief at 31.

Johnson's fifth issue warrants no relief. Initially, Johnson cites no relevant authority for his claim that the delay in holding the PCRA hearings caused him "manifest injustice." *See Commonwealth v. Tielsch*, 934 A.2d 81, 93 (Pa. Super. 2007) (holding that undeveloped claims will not be considered on appeal). Moreover, because Johnson did not testify at either PCRA hearing, the PCRA court had no basis upon which to consider the impact of Johnson's decision to testify, had Walker been called as a witness. The same is true of his challenge to the PCRA court's conclusion that Walker's testimony would have been cumulative to Johnson's trial testimony. Indeed, Walker's testimony, as summarized by the PCRA court above, actually conflicted with the victim's statement to police and the victim's trial testimony

regarding the circumstances surrounding the shooting. *See* N.T, 8/3/10, at 85-103.

Finally, Johnson's characterization of the evidence presented at trial is self-serving, and does not comport with the appellate review of sufficiency claims. *See generally Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa. Super. 2011). At trial, the victim's initial statement to police, in which he identified Johnson as the man who shot him, was introduced through testimony from law enforcement. Although at trial the victim recanted his identification of Johnson, his prior statement remained substantive evidence for the jury's consideration.[4] In fact, as this Court previously explained:

> Our Supreme Court has recognized that a witness's prior inconsistent statement is admissible as substantive evidence if "the statement is given under oath at a formal legal proceeding; or the statement had been reduced to a writing signed and adopted by the witness, or a statement that is a contemporaneous verbatim recording of the witness's statements." *Commonwealth v. Lively*, 530 Pa. 464, 610 A.2d 7, 10 (1992) (citing *Commonwealth v. Brady*, 510 Pa. 123, 507 A.2d 66 (1986)).
>
> [Johnson] fails to explain why the jury could not consider the evidence. On the night of the shooting, the victim gave a statement to police identifying [Johnson] as the shooter. After the statement was reduced to writing, it was signed by the victim. At trial, the victim recanted this identification,

---

[4] Johnson notes that this Court previously determined that the evidence presented against him was not overwhelming. See Johnson's Brief at 25. While we did make such a statement, it was not made as part of a sufficiency determination. Rather, we we rejected the PCRA court's consideration of Johnson's ineffectiveness claim in which it employed a harmless error analysis for failing to call these witnesses. *See Johnson*, unpublished memorandum at 15-16.

claimed he did not remember giving the statement to police, and denied signing anything. In response, the prosecutor presented the victim with a copy of his signed statement. Again, the victim denied making the statement. The Commonwealth then called Detective Murray who testified that he witnessed the victim making this identification. Detective Murray opined that the victim was not intoxicated while giving the statement as he was "lucid and "able to communicate in a coherent manner." N.T., 8/3/16, at 133. [I]t was proper for the jury to consider the victim's prior inconsistent statement as substantive evidence[.]

**Johnson**, unpublished memorandum at 21-22. Thus, for all of these reasons, Johnson's fifth issue fails.

In his sixth issue, Johnson challenges the PCRA court's rejection of Joyner's testimony as incredible and cumulative. This claim is meritless.

We first note the PCRA court's summary of Joyner's testimony:

The third person who was the subject of the Superior Court order is Kieyanna Joyner, [Johnson's] aunt. Joyner was listed by Johnson as an alibi witness. She, like Walker, appeared in court on the first day of trial, but never returned to testify. Indeed, she testified at the evidentiary hearing that she was not available the second day because of a conflict with her job. She testified at the evidentiary hearing that she remembered the day of the shooting because she had a cookout at her home on May 13, 2008, starting at 2:00 pm and ending around 2:00 am the following morning. Johnson, she testified, was present at her home the entire time and could not have committed the shooting, although people on the street had accused [Johnson] shortly after the crime was committed. When asked why she had a [cookout] at her home on a Tuesday she replied that there was no special occasion. Finally, in her testimony, Joyner listed a number of persons at her cookout, the one person she did not name as the alibi witness called at trial, Tayla McNeil. In the final analysis, [Joyner's] alibi testimony did not have the ring of truth to it.

- 21 -

PCRA Court Opinion, 5/20/19, at 4.

In support of his claim, Johnson asserts that the PCRA court's "determination that Joyner was not credible because her testimony did not have a ring of truth to it is not supported by the record where her testimony was not contradictory or inconsistent with the other alibi witnesses and the Superior Court has already made a determination that the alibi is valid." Johnson's Brief at 13. In addition, Johnson claims Joyner's testimony was not cumulative because "it comes from a perspective that was not presented at trial, " *id.* at 38, and the court "failed to consider the fact that the alibi witness that testified a trial messed up her alibi by mixing up the dates." *Id.* at 39.[5]

Johnson's claims are meritless. Initially, we note that, contrary to Johnson's claim, our review of the record supports the PCRA court's conclusion that, even if believed, Joyner's testimony would have been cumulative of McNeil's alibi testimony at trial. Johnson does not adequately develop how Joyner's testimony provided a different "perspective" from McNeil's as both women testified that Johnson was with them at a barbecue on the day of the shooting. *Tielsch*, *supra*. Moreover, our review of the testimony from Johnson's trial reveals that it was trial counsel, rather than Joyner, who misspoke regarding the date of the barbecue. Indeed, in rejecting Johnson's

---

[5] As part of Johnson's statement of this issue, he asserts that our Supreme Court has held alibi testimony "need not be 'wholly believed' to 'raise a reasonable doubt.'" *Id.* at 5; 36-37. Because Johnson does not adequately develop this claim, we find the issue waived. *See Tielsch*, *supra*.

claim that trial counsel was ineffective for asking McNeil about a wrong date regarding her alibi testimony, this Court explained:

> [Trial counsel] did not present a false alibi defense, but misspoke in questioning witness Talia [sic] McNeil about [Johnson's] whereabouts on May 30, 2009, when the shooting occurred on May 13, 2008. When counsel realized the error, he corrected the mistake and repeated his line of questioning to Ms. McNeill so that she could testify as to her knowledge of [Johnson's] whereabouts on the correct date. Ms. McNeil confirmed that she knew counsel meant to ask her about her account of May 13, 2008, as it was a day she "wouldn't forget" being with [Johnson]. N.T., 8/4/10, at 26. Ms. McNeil then testified that she recalled the day of the shooting because her phone "started blowing up" with messages from people accusing [Johnson] of the shooting that had just occurred while she was with [Johnson] at a barbecue. N.T., 8/4/10, at 25.
>
> Although counsel did not have a reasonable basis for questioning Ms. McNeil about the wrong date, [Johnson] failed to show he was unfairly prejudiced by [trial] counsel's inadvertent reference that was corrected. Despite counsel's error, alibi witness Ms. McNeil repeatedly confirmed that she remembered that she was with [Johnson] at the exact time the shooting occurred.

***Johnson***, unpublished memorandum at 8-9. Thus, for the above reasons, Johnson's sixth issue fails.

In his final issues, seven and eight, Johnson argues the cumulative prejudicial effect of his preceding claims, and argues that we should grant him a new trial rather than remand for further determinations by the PCRA Court. Because we have concluded his six other issues warrant no relief, we need not address these issues further.

- 23 -

In sum, our review of the record supports the PCRA court's conclusion that all of Johnson's claims are without merit and do not warrant the award of a new trial. Thus, we affirm the PCRA court's order denying post-conviction relief.

Order affirmed.


*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 5/1/2020*